## No. 12-2175

# United States Court of Appeals
# for the Fourth Circuit

KIRAN M. DEWAN, CPA, PA,
and KIRAN M. DEWAN,

*Plaintiffs-Appellants,*

*v.*

ARUN WALIA,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Maryland at Baltimore*

## RESPONSE BRIEF OF APPELLEE

MARK G. CHALPIN, ESQ.
116 Billingsgate Lane
Gaithersburg, Maryland 20877
(301)990-4900
mark.chalpin@gmail.com

RAMESH KHURANA, ESQ.
THE KHURANA LAW FIRM, LLC
15883 Crabbs Branch Way
Rockville, Maryland 20855
(301)548-9595
rk@skulaw.com

*Counsel for Defendant/Appellee*

February 19, 2013



UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 12-2175      Caption: KIRAN M. DEWAN, CPA, PA, et al. v. ARUN WALIA

Pursuant to FRAP 26.1 and Local Rule 26.1,

ARUN WALIA
(name of party/amicus)

who is _____Appellee_____ , makes the following disclosure:
        (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                   ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                       ☐ YES ☑ NO
     If yes, identify all such owners:

i

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____              Date: _____02/15/2013_____

Counsel for: Appellee

ii

# TABLE OF CONTENTS

*PAGE*

Corporate Disclosure Statement ................................................................. i

Table of Authorities ................................................................................. v

Jurisdictional Statement .......................................................................... 1

Statement of Issues ................................................................................. 1

Statement of the Case ............................................................................. 2

Statement of Facts ................................................................................. 4

Summary of Argument............................................................................ 13

Standard of Review................................................................................ 15

Argument................................................................................................ 17

   I.   The Arbitrator Had Authority to Render an Award against
        Appellant Dewan, Who Was an Essential and Necessary Party
        to the Arbitration............................................................................ 17

   II.  The Arbitrator Had Jurisdiction to Render an Award on Walia's
        INA-Related Claims Based on Agreements between the Parties.................24

   III. The Arbitrator Did Not Exceed her Powers in Awarding
        Damages despite an Enforceable Release Agreement.................................34

   IV.  The Arbitrator Did Not Manifestly Disregard the Law in
        Awarding Damages to Walia on his INA-related Claims ............................42

Conclusion ............................................................................................. 44

Request for Relief .................................................................................. 46

Statement Regarding Oral Argument ...................................................... 46

Certificate of Compliance ........................................................................48

Certificate of Filing and Service ...........................................................49

# TABLE OF AUTHORITIES

## CASES                                                              PAGE(S)

*Allen v. Steinberg,*
    244 Md. 119, 223 A.2d 240 (1966) ............................................22

*American Recovery Corporation v. Computerized Thermal Imaging, Inc.,*
    96 F.3d 88 (4th Cir. 1996) ...............................................33

*AO Techsnabexport  v. Globe Nuclear Servs. & Supply, Ltd,*
    656 F. Supp. 2d 550 (D. Md. 2009) ............................................13

*Apex Plumbing Supply, Inc. v. U.S. Supply Co.,*
    142 F.3d 188 (4th Cir. 1998) ................................................13, 16

*Baltimore County v. Baltimore,*
    329 Md. 692, 621 A.2d 864 (1993) ................................................35

*Baltimore Teachers Union, Am. Fed. Of Teachers, Local 340 v.*
    *Mayor of Baltimore,*
    108 Md. App. 167, 671 A.2d 80, 87 (1996),
    *cert. denied*, 342 Md. 472, 677 A.2d 565 (1996) ...................................37-38

*Biran v. JP Morgan Chase & Co.,*
    2002 U.S. Dist. LEXIS 17076 (S.D.N.Y. Sept. 12, 2002) ...........................26

*Blitz v. Beth Isaac Adas Isr. Congregation,*
    115 Md. App. 460, 694 A.2d 107 (1997) .........................................13, 36-37

*Brewster v. Woodhaven Bldg. & Dev., Inc.,*
    360 Md. 602, 759 A.2d 738 (2000) ................................................29

*Burchell v. Marsh,*
    58 U.S. 344, 17 How. 344 (1854).................................................32

*Chavez v. Freshpict Foods, Inc.,*
    456 F.2d 890 (10th Cir. 1972) ..................................................26

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ...............................32

v

*Cochran v. Norkunas,*
    398 Md. 1, 919 A.2d 700 (2007) ................................................................18

*Collyard v. Washington Capitals,*
    477 F.Supp. 1247 (D. Minn. 1979) ........................................................26

*Communications Equipment Workers, Inc. v. Western Elec. Co.,*
    320 F. Supp. 1277 (D. Md. 1970), *aff'd*, 1971 WL 2967
    (4th Cir. May 27, 1971) ........................................................................23

*Dale v. Pru-Bache Secur. Inc.,*
    719 F.Supp.2d 1164 (E.D. N.Y. 1989) ................................................25

*Dowling v. United States,*
    476 F. Supp. 1018 (D. Mass. 1979) ......................................................26

*Duplex Envelope Co., v. Baltimore Post Co.,*
    163 Md. 596 (1933) ................................................................................19

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ................................16

*Gilmer v. Interstate-Johnson Lane, Corp.,*
    500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ..........................31

*Gold Coast Mall, Inc. v. Larmar Corp.,*
    298 Md. 96, 468 A.2d 91 (1983) ..........................................................30

*Graceman v. Goldstein,*
    93 Md. App. 658, 613 A.2d 1049 (1992),
    *cert. denied*, 329 Md. 336, 619 A.2d 546 (1993) ................................36

*Guzowski v. Hartman,*
    849 F.2d 252 (6th Cir.1988) ..................................................................17

*Hanna v. Plumer,*
    380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ..............................16

*Hill v. Brush Engineered Materials, Inc.,*
    383 F. Supp. 2d 814 (D. Md. 2005) ......................................................21

*Hooters of America, Inc. v. Phillips,*
    173 F.3d 933 (4th Cir. 1999) ..............................................................25

*Int'l Ass'n of Firefighters, Local 1619 v. Prince George's County*,
74 Md. App. 438, 538 A.2d 329 (1988) ...................................................14

*J.J. Ryan & Sons v. Rhone v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988) ...........................................................34

*Johnson's v. Hugo's Skateway*,
974 F.2d 1408 (4th Cir. 1992) .........................................................16

*Knox v. Symmonds*,
1 Ves. Jr. 369 ...............................................................................33

*Little v. Union Trust Co.*,
45 Md. App. 178, 412 A.2d 1251 (1980) .........................................22

*Long John Silver's Restaurants, Inc. v. Cole*,
514 F.3d 345 (4th Cir. 2008) ......................................................42, 43

*Mandl v. Bailey*,
159 Md. App. 64, 858 A.2d 508 (2004) ..........................................37

*Mate v. Richard Dattner Architects*,
972 F.Supp. 738 (S.D.N.Y. 1997) ...................................................26

*Mattingly v. Hughes Electronics Corp.*,
147 Md. App. 624, 810 A.2d 498, 504 (2002) .................................30

*Mayor of Rockville v. Walker*,
100 Md. App. 240, 640 A.2d 751 (1994) .........................................21

*McKeever v. Realty Corp.*,
183 Md. 216, 37 A.2d 305 (1944) ...................................................22

*McKinney Drilling Co. v. Mach I Ltd. Partnership*,
32 Md. App. 205, 359 A.2d 100 (1976) ...........................................26

*MCR of Am., Inc. v. Greene*,
148 Md. App. 91, 811 A.2d 331 (2002) ...........................................18

*Md. Nat'l Bank v. Resolution Trust Corp.*,
895 F. Supp. 762 (D. Md. 1995) ................................................21-22

*Mediterranean Enterprises, Inc. v. Ssangyong*,
  708 F.2d 1458 (9th Cir. 1983) ....................................................34

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*,
  70 F.3d 418 (6th Cir. 1995) .....................................................43

*Missler v. Anne Arundel County*,
  271 Md. 70, 314 A.2d 451 (1974) ............................................22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) .............31

*Moldauer v. Canandaigua Wine Co.*,
  ARB No. 04-022, ALJ No. 2003-SOX-026
  (ARB Dec. 30, 2005) (concurring opinion)................................38

*Montgomery County v. FOP Montgomery County Lodge* 35,
  147 Md. App. 659, 810 A.2d 519 (2002) ...................................30

*Moore v. Microsoft Corp.*,
  741 N.Y.S.2d 91, 283 A.D.2d 587 (N.Y. App. Div. 2002)...........19

*Motise v. America Online, Inc.*,
  346 F. Supp.2d 563 (S.D.N.Y. 2004) .........................................19

*Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*,
  76 F.3d 606 (4th Cir. 1996) .....................................................16

*National Fire Ins. Co. v. Tongue, Brooks & Co.*,
  61 Md. App. 217, 486 A.2d 212 (1984) .....................................19

*Newcome v. Esrey*,
  862 F.2d 1099 (4th Cir. 1988) .................................................25

*Nick-George Ltd. Partnership v. Ames Ennis, Inc.*,
  279 Md. 385, 368 A.2d 1001 (1977) ..........................................37

*NRT Mid-Atlantic, Inc. v. Innovative Props., Inc.*,
  144 Md. App. 263, 797 A.2d 824 (2002) ...................................30

*O'Hare v. Global Natural Resources, Inc.*,
  898 F.2d 1015 (5th Cir. 1990) .................................................39

*O-S Corp. v. Samuel A. Kroll, Inc.*,
    29 Md. App. 406, 348 A.2d 870 (1975),
    *cert. denied*, 277 Md. 740 (1976) ...................................................... 26-27, 37

*Parlette v. Parlette*,
    88 Md. App. 628, 596 A.2d 665 (1991) ......................................................21

*Pattern v. Signator Ins. Agency, Inc.*,
    441 F.3d 230 (4th Cir. 2006) ........................................................16

*Porter v. Gen. Boiler Casing Co.*,
    284 Md. 402, 396 A.2d 1090 (1979) ...................................................18, 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ...............................33

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ........................................................20

*Ray v. Eurice*,
    201 Md. 115, 93 A.2d 272 (1952) ........................................................19

*Remmey v. Paine Webber, Inc.*,
    32 F.3d 143 (4th Cir. 1994) ........................................................43

*Robb v. Amataex Corp.*,
    769 F.2d 996 (4th Cir. 1985) ........................................................46

*Roberts Bros. v. Consumers' Can Co.*,
    102 Md. 362, 62 A. 585 (1905) ........................................................14

*Rourke v. Amchem Prods., Inc.*,
    153 Md. App. 91, 835 A.2d 193 (2003), *aff'd*, 384 Md. 329,
    863 A.2d 926 (2004) ........................................................37

*RTKL Associates v. Baltimore County*,
    147 Md. App. 647, 810 A.2d 512 (2002) ......................................................30

*Safeway Stores v. A. Bakery & Confectionery Workers*,
    390 F.2d 79 (5th Cir. 1968) ........................................................43

*Shah v. Wiclo Sys., Inc.*,
    126 F. Supp. 2d 641 (S.D.N.Y. 2000) ......................................................26

*Shailendra Kumar, P.A. v. Dhanda,*
   426 Md. 185, 43 A.3d 1029 (2012) ............................................................14

*Shaw v. Merritt-Chapman & Scott Corp.,*
   554 F.2d 786 (6th Cir.), *cert. denied,* 434 U.S. 852, 98 S.Ct. 167,
   54 L.Ed.2d 122 (1977) ...............................................................................17

*Shillman v. Hobstetter,*
   249 Md. 678, 241 A.2d 570 (1968) ...........................................................22

*Smith v. Amedisys,*
   298 F.3d 434 (5th Cir. 2002) .....................................................................38

*Snider Bros. Inc. v. Heft,*
   271 Md. 409, 317 A.2d 848 (1974) ...........................................................18

*Snyder v. Berlinger Constr. Co.,*
   79 Md. App. 29, 555 A.2d 523, *cert. denied,* 316 Md. 550,
   560 A.2d 1118 (1989) .................................................................................26

*Southern Md. Hosp. Ctr. V. Edward M. Crough, Inc.,*
   48 Md. App. 401, 427 A.2d 1051 (1981), *cert. denied,*
   290 Md. 721 (1981) ....................................................................................27

*Spitze v. Baltimore & O Railroad Co.,*
   75 Md. 162, 23 A. 307 (1892) ...................................................................35

*Stephen L. Messersmith,*
   313 Md. at 664, 547 A.2d 1048 (1988) .....................................................30

*Swift v. Tyson,*
   41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842)...................................................16

*The Redemptorists v. Coulthard Servs.,*
   145 Md. App. 116, 801 A.2d 1104 (2002) .................................................30

*Thomforde v. IBM Corp.,*
   406 F.3d 500 (8th Cir. 2005) .....................................................................38

*Three S. Del., Inc. v. DataQuick Info. Sys., Inc.,*
   492 F.3d. 520 (4th Cir. 2007) .............................................................. 15-16

*United Paperworkers Int'l Union v. Misco, Inc.*,
    448 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 286 (1987) ......................................43

*Upshur Coals Corp. v. United Mine Workers of America*,
    933 F.2d 225 (4th Cir. 1991) .................................................13, 32

*U.S. Postal Service v. Am. Postal Workers Union*, AFL-CIO,
    204 F.3d 523 (4th Cir. 2000) .................................................16, 32

*Venkatraman v. REI Sys., Inc.*,
    417 F.3d 418 (4th Cir. 2005) .................................................25, 26

*Wachovia Bank, N.A. v. Schmidt*,
    445 F.3d 762 (4th Cir. 2006) .......................................................45

*Walther v. Sovereign Bank*,
    386 Md. 412, 872 A.2d 735, 742 (2005) ........................................14

*Watson v. Bank of America*,
    196 Fed. Appx. 306 (5th Cir. 2006) .........................................25-26

## <u>STATUTES</u>

Immigration and Nationality Act §101(a)(15)(H)(i)(b), 8 U.S.C. §
    1101(a)(15)(H)(i)(b) ...................................................................4

8 U.S.C. § 1182(n) .......................................................................*passim*

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* .......................................14

Sherman Act, 15 U.S.C. §§ 1-7 ...........................................................31

Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ...........................25

§10 (b) of the Securities Exchange Act of 1934, 15 U.S.C § 78j(b) ......................31

Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1961 *et seq.* ...31

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1332(a)(2).......................................................................1

28 U.S.C. § 1367 ..............................................................................1

Older Workers Benefit Protection Act of 1990, 29 U.S.C. §§ 621 *et seq.*..............36

29 U.S.C. § 626(f)...............................................................................................36

29 U.S.C. § 626(f)(1)(F)(i) ...................................................................................36

29 U.S.C. § 626(f)(1)(G)........................................................................................36

29 U.S.C. §626(f)(3) .............................................................................................39

Maryland Uniform Arbitration Act, MD Code,
    Courts and Judicial Proceedings §§ 3-201 *et seq.*...................................14, 23

MD Code, Courts & Judicial Proceedings § 3-202 ..................................................29

MD Code, Courts and Judicial Proceedings § 3-207................................................29

MD Code, Courts and Judicial Proceedings § 3-207 (a) .........................................29

Maryland Wage Payment and Collection Act, MD Code, Labor and
    Employment §§ 3-501 *et seq.*...............................................................*passim*

MD Code, Labor and Employment § 3-505(a).........................................................38

MD Code, Labor and Employment § 3-507.1 .........................................................38

MD Code, Labor and Employment § 3-507.1(b) .....................................................38

## **REGULATIONS**

8 C.F.R. § 214.2(h)(4)(iii)(E)...............................................................................10

20 C.F.R. § 655.731(c)(7)(iii)...............................................................................10

## **RULES**

F.R.C.P. 12(b)(6)..................................................................................................17

MRPC 1.8(a)(3) ...................................................................................................35

## **OTHER AUTHORITIES**

17 C.J.S. Contracts § 62 at 732 (1963) .................................................................19

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Maryland in Baltimore had jurisdiction under 28 U.S.C. § 1332(a)(2), which provides federal District Courts with subject matter jurisdiction over actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Appellant Kiran M. Dewan, CPA, PA ("KMDCPA"), is a Maryland Close Corporation, Appellant Kiran M. Dewan ("Dewan") is a citizen of Maryland, and Appellee Arun Walia ("Walia") is a non-resident alien and a citizen of Canada. This Court has jurisdiction under 28 U.S.C. § 1291, which provides federal circuit courts with jurisdiction over appeals from final orders. Further, the District Court had jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

## STATEMENT OF ISSUES

I.    Whether the District Court erred in holding that the Arbitrator had authority to render an award against Dewan where Dewan had filed for arbitration as an individual and was a necessary and essential party to the arbitration?

II.   Whether the District Court erred in holding that the Arbitrator had jurisdiction over claims arising under the Immigration and Nationality Act ("INA") where the parties' agreements called for arbitration of any and all disputes or controversies and neither the relevant statute nor the case law interpreting it precludes arbitration of claims arising under the statute?

1

III.    Whether the District Court erred in refusing to vacate the arbitration award notwithstanding an enforceable release agreement where: 1) the wages owed Walia greatly exceeded the severance pay, 2) Dewan failed to advise Walia to seek independent counsel before signing the 2009 Release Agreement, and 3) Appellants committed numerous fraudulent and malicious acts in inducing Walia to sign the 2009 Release Agreement and seeking to enforce the agreement without paying Walia wages owed him?

IV.    Whether the District Court erred in refusing to vacate the arbitration award where the Arbitrator awarded damages on Walia's INA-related claims, pursuant to an employment agreement and where applicable law did not preclude arbitration of his INA-related claims?

## STATEMENT OF THE CASE

On August 9, 2011, Appellants filed an original Complaint in the United States District Court for the District of Maryland seeking vacatur of an Interim Arbitration Award entered on July 11, 2011 by Arbitrator Dr. Andree Y. McKissick ("Dr. McKissick"). JA 2. On September 1, 2011, Dewan filed a motion for partial summary judgment on the ground that he was not a party to any arbitration agreement with Walia. JA 3. On September 9, 2011, Walia filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. JA 3.

On November 18, 2011, the Arbitrator entered a Final Arbitration Award ("Final Award") that included the granting of punitive damages against Appellants for egregious frauds committed by them. JA 255-260[1]. The arbitration tribunal

---

[1] All references to JA are to the page in the Joint Appendix, and where appropriate, a specific paragraph number on the page.

2

granted punitive damages to Appellee upon a finding that Appellants filed multiple falsified documents in the arbitration proceedings.  JA 259.

On December 16, 2011, Appellants filed an amended complaint to vacate the Final Award.  JA 104-157.  On December 23, 2011, Walia moved to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction.  JA 4.

On August 3, 2012, the District Court issued a Memorandum Opinion and Order denying Dewan's motion for partial summary judgment, granting Walia's motion to dismiss the amended complaint with prejudice, denying Appellants' petition to vacate the award, and dismissing the Amended Complaint with prejudice.  JA 206-227.   The District Court stated:

> Plaintiffs' claims before this Court are almost identical to the ones presented before the arbitration tribunal.  Essentially, in bringing this action Plaintiffs have asked this Court to second-guess the well-reasoned award by the arbitrator, Dr. McKissick. Moreover, the record indicates that Plaintiff Dewan, as the sole owner of KMDCPA and an attorney, drafted the agreements signed between the parties and represented Defendant Walia in his immigration matters.  As far as the agreements are concerned, the record reflects Dewan included binding arbitration provisions in the agreements drafted by him. Pursuant to these agreements Dewan commenced arbitration proceedings on behalf of himself and KMDCPA against Defendant Walia and agreed to the institution of Dr. McKissick as arbitrator over the arbitration dispute.  Now, having received an unfavorable result in his forum of choice, Dewan petitions this Court to vacate the award. JA 223.

3

Additionally, the District Court stated:

> Having thoroughly reviewed the record of this case, this Court finds
> substantial support for the decisions made by the arbitrator, that the
> arbitrator did not go beyond the scope of the submissions, and that the
> arbitrator's decisions were not arbitrary.  JA 224.

On August 22, 2012, Appellants filed a motion for reconsideration.  JA 7.

On September 21, 2012, the District Court issued a Memorandum Order denying

the motion for reconsideration and granting Walia's petition to confirm and

enforce the Final Award.  JA 273-282.  On September 24, 2012, Appellants noted

this appeal.  JA 283-285.

## STATEMENT OF FACTS

Walia, a Canadian national, worked as an auditor and accountant with

KMDCPA, an accounting firm owned solely by Dewan from, June 3, 2003

through August 21, 2009 under an H-1B status[2].  JA 35; 62; 208.  Dewan is an

attorney and a certified public accountant licensed to practice both professions in

Maryland.  JA 207.  KMDCPA is an accounting firm registered under Maryland

law with its principal place of business in Baltimore, Maryland, which is owned

by Dewan.  JA 207-208.

---

[2] The H-1B visa status can be applied for by United States employers to hire
foreign nationals in specialty occupations, which include accountants.  *See*
Immigration and Nationality Act §101(a)(15)(H)(i)(b), 8 U.S.C. §
1101(a)(15)(H)(i)(b).

Walia started working with KMDCPA on June 3, 2003, pursuant to a grant of H-1B status to him at an annual salary of $38,000. JA 78. In March 2006, Walia's annual salary was increased to $40,000 per year. JA 270.

On May 6, 2006, KMDCPA and Walia entered into a new employment agreement for a salary of $50,000 per year, covering the period May 1, 2006 to March 23, 2009 ("2006 Employment Agreement"). JA 244-248. The 2006 Employment Agreement includes an arbitration clause which states that:

> *Settlement by Arbitration*. **Any claim or controversy** that arises out of or relates to this agreement, or the breach of it, shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Judgment upon the award tendered may be entered in any court with jurisdiction. Submission to arbitration does not affect Company's right to Injunctive Relief. JA 247.

The 2006 Employment Agreement also contained a provision to pay 5% of KMDCPA's net profits to Walia, within 30 days of KMDCPA's fiscal year. JA, 244, ¶3. Pursuant to this provision, Walia was paid only $2,653 for the period ended December 2006, albeit with delay, *i.e.*, on December 26, 2007. JA 78-79.

Appellants manipulated the system to seek approval of the Labor Condition Applications ("LCA") and the H-1B petitions filed with USCIS in order to pay Walia a lower wage than the wage payable to similarly situated United States workers. JA 53. Walia had eleven prior years of work experience in June 2003 when he started working with KMDCPA; however, KMDCPA treated him as an entry-level employee and paid him lower wages than the prevailing wage rate. JA

5

53.  Walia's minimum wages per year for 2003 through 2006 should have been $61,547.  JA 53.  His minimum wages at the time of filing of extension of H-1B petition in 2006, for the period 2006-2009, should have been $70,054.00, and from 2009 onward should have been $74,069 per year.  JA 54.  Thus, there was a shortfall of wages of $70,641 for 2003 through 2006, and $60,162 for the period 2006 through 2009.  JA 54.

Walia fell seriously ill due to thyroid cancer and was admitted to a Baltimore hospital for treatment in February/March 2009.  JA 37; 210.  Dewan exploited Walia during his illness by having his wife, Veena Sindwani ("Sindwani"), visit Walia in the hospital's Intensive Care Unit to have him sign an employment agreement ("2009 Employment Agreement") in his hospital bed and then failing to provide Walia with a copy of the new employment agreement.  JA 52; 61. The 2009 Employment Agreement signed between the parties was for an annual salary of $74,069.  JA 62.  In order to pay Walia's salary at a reduced level, Appellants maliciously destroyed the 2009 Employment Agreement, as this agreement increased his salary.  JA 258.[3]

---

[3] The District Court stated: "Although Plaintiffs contend that the agreement never existed, the Arbitrator determined, based on strong evidence in the record, that not only had it existed, but also that Plaintiffs had made serious misrepresentations to the arbitration tribunal, the United States Citizenship and Immigration Services ("USCIS") and the Department of Labor."  JA 211.

On November 3, 2009, Walia and KMDCPA entered into an Employee Settlement and Release Agreement ("2009 Release Agreement").  The 2009 Release Agreement includes an arbitration clause which states that:

> *Dispute.* Should a dispute arise concerning this AGREEMENT or its performance, such dispute shall be resolved, at the election of the party seeking to enforce the AGREEMENT, by binding arbitration administered by the American Arbitration Association under its commercial dispute resolution rules.  If arbitration is initiated, the arbitration shall be held in Baltimore, Maryland.  JA 251.

There is nothing in the record to show that Dewan advised Walia to consult with independent counsel before signing the 2009 Release Agreement.

On January 29, 2010, *Dewan, in his individual capacity, and KMDCPA* commenced action against Walia by filing claims and demanding arbitration upon AAA.  JA 267.   Thus, Dewan and KMDCPA jointly demanded arbitration against Walia.  JA 267-268.  Dewan specifically requested AAA to include his name and KMDCPA's name in the caption of the case.  JA 267.   Moreover, Dewan was intended to be the primary beneficiary of an agreement made with Walia.  JA 114; 251, ¶ 4.

After four full days of hearings, the Arbitrator entered an Interim Award on July 11, 2011.  JA 33-72.  She rejected Appellant's claims against Walia as baseless.   JA 59; 64-65.  She also stated that she intended to award Walia compensatory damages for all wage shortfalls from June 2003 to the date of the award and punitive damages for frauds perpetrated by Appellants.  JA 70.

7

On November 18, 2011, the Arbitrator entered a Final Award ("Final Award"). JA 255-260. The Final Award dismissed all of Appellants' claims. JA 259. The Final Award also granted Walia's counterclaims against Dewan and KMDCPA, jointly and severally. JA 259. The total award to Walia was $457,108.20. JA 259.[4]

Additionally, the Arbitrator fully reviewed the falsified documents filed by Dewan and KMDCPA in the arbitration proceedings. JA 258-259. In the arbitration, Dewan had submitted materially altered tax returns of KMDCPA for the years 2006 through 2008 to demonstrate that KMDCPA's net income was lower as compared to the income reflected in the actual returns filed with the IRS. JA 258. By fraudulently lowering KMDCPA's income, Dewan tried to reduce KMDCPA's financial liability to Walia because of the provision in the 2006 Employment Agreement entitling Walia to 5% of KMDCPA's net profits. JA 159; 244, ¶ 3. However, Walia uncovered Dewan's malicious act of fraud, and the Arbitrator sanctioned Appellants appropriately. JA 258. The Arbitrator, *inter alia*, wrote in the Award:

> However, the 2008 Internal Revenue Service Return, submitted by the Claimant, shows a substantially different gross income of $481,693.00. It is this discrepancy about which this Arbitrator must conclude that the Claimant was not truthful. JA 258.

---

[4] Walia submits that it is extraordinary for an employer who initiates arbitration to have an award entered against it for almost half a million dollars and can be explained by the frauds perpetrated during the arbitration by Appellants. *See infra*.

Walia was able to demonstrate that the income tax returns had been fraudulently altered when he received KMDCPA's unaltered income tax returns pursuant to a Freedom of Information Act ("FOIA") request from the Department of Homeland Security on May 19, 2011. JA 174-178. The ordinary business income or net profit of the company, based on the falsified tax returns (JA 165-168) and actual returns (JA 170-172) as filed by KMDCPA with DHS, is shown in the following table:

| Year | Income Based on Falsified Tax Returns Filed in the Arbitration Proceedings | Income Based on Tax Returns Received Under FOIA by Walia[5] |
|------|------|------|
| 2006 | **$83,368** (GR* $437,996) | $**155,368** (GR* $437,996) |
| 2007 | $**95,205** (GR* $490,243) | $**167,204** (GR* $490,243) |
| 2008 | **$81,641** (GR* $481,693) | $**177,641** (GR* $481,693) |
| 2009 | **$69,280** (GR*$516,948) | No tax returns were received under FOIA |

*GR stands for Gross Receipts*

Thus, Dewan fraudulently reduced KMDCPA's net profit by $72,000, $72,000 and $96,000 for the years 2006, 2007 and 2008, respectively. He did it so

---

[5] The veracity of these net profit numbers can also be ascertained by reference to KMDCPA's July 31, 2009 letter to DHS (JA 178) in connection with another of Walia's immigration related matters. This letter shows net income of $167,204.00 and $177,641.00 for the years 2007 and 2008, respectively. JA 178. These numbers correspond to the tax return numbers Walia received pursuant to his FOIA request.

as to reduce Appellants' financial liability to Walia.  JA 159; 244, ¶ 3.  Appellants committed multiple frauds during the arbitration and proffered repeated false testimony.  On May 27, 2011, Walia filed an affidavit in the arbitration explaining in detail Appellants' numerous fraudulent actions.  JA 78-84.  Appellants, in their attempt to prove that Walia quit his job on August 21, 2009, materially altered a letter dated September 8, 2009 that Dewan had written to USCIS, Texas Service Center.  JA 182.  Appellants altered this letter disclosed in arbitration to include a new third paragraph regarding termination of Walia's H-1B status.   JA 182. Pursuant to a FOIA request, Walia retrieved the actual text of the letter, which did not have this third paragraph.  JA 180.  The significance of this added paragraph is that such a letter to USCIS is determinative of the termination date of an employee hired pursuant to an H-1B approved petition.   In the absence of evidence of termination of such an employee's job or the employee's resignation letter, the employer's liability to pay the employee continues.[6]

Based on this documentation of the fraudulent evidence presented by Appellants, the Arbitrator ruled as follows:

---

[6] The employer's liability for back wages ceases when the employee is terminated. An employee may not be considered properly terminated for purposes of cutting off backpay and frontpay unless the employer follows 20 C.F.R. §655.731 (c)(7)(iii) and notifies: (1)the employee; (2) the USCIS that the employment relationship has been terminated, and (3) provides employee with payment for transportation pursuant to 8 C.F.R. §214.2(h)(4)(iii)(E).

*Respondent is still currently employed as an Accountant to present at the prevailing wage rate, as there was no Letter of Termination received by Respondent.* (emphasis added)  JA 259.

Also, the Arbitrator awarded Walia $70,000 for the cost of having to defend himself against the baseless claims of solicitation, breach of the covenant not to compete, and the bartering of confidential and sensitive data of KMDCPA and **Appellants' presentation of incongruent, fraudulent documentation.**  JA 259.

The Arbitrator also concluded that Appellants perpetrated falsification of documentation and destroyed the 2009 Employment Agreement, which was executed by Walia while admitted in a Baltimore hospital for treatment of his thyroid cancer:

> In addition, the missing "Employment Agreement of 2009" is also at issue and was never recovered from the Department of Homeland Security files.  It is now deemed as "lost."  In light of the foregoing, **it would appear that the Claimant was a party to fraud due to the disparity in the amounts verified in documents** presented to the United States Citizenship and Immigration Services and this arbitration tribunal in comparison to his tax returns, as described earlier. (emphasis added)  JA 258.

 The Arbitrator also found:

> Moreover, since 2009 the prevailing wages [has] increased now to $74,069.00 per year for the Respondent.  Based on the above, this Arbitrator finds that there is a viable Employment Agreement drafted by the Claimant and signed by the Respondent on March 14, 2009. **These monetary discrepancies are the reason that the Claimant has purposefully withheld the Employment Agreement of 2009.** (emphasis added)  JA 62.

Moreover, Dewan **forged Walia's minor daughter's signature** on an immigration benefit application filed for the granting of immigration status to the USCIS under penalty of perjury, thereby subjecting Walia to possible criminal prosecution. JA 161, ¶ 11(c). Walia had signed immigration-related Forms G-28 and I-539 on behalf of his minor daughter to extend her H-4 visa status in Sindwani's presence. JA 61. The arbitrator even agreed to hold more hearings to provide an opportunity for both parties to present their newly acquired evidence under Walia's FOIA request. JA 68; 188.

Appellants became uneasy when Walia received documents from DHS under his FOIA request as they had never expected that Walia would be able to procure these documents so quickly. JA 160; 188. The documents received by Walia from DHS conclusively established that Appellants maliciously perpetrated fraud to attempt to reduce their financial obligation to Walia. JA 159; 189. The Arbitrator decided to grant additional time to Appellants to file their opposition to Walia's motion for issuance of the Final Award. However, Appellants chose not to file any response during the extended time. JA 256. In sum, Appellants' numerous fraudulent actions were uncovered in arbitration and recognized and sanctioned by the Arbitrator. JA 69-70; 258-259.

## SUMMARY OF ARGUMENT

Judicial review of an arbitrator's award is "severely circumscribed." *Apex Plumbing Supply, Inc. v. U.S. Supply Co*., 142 F.3d 188, 193 (4th Cir. 1998). "In fact a district court's authority to review an arbitration decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all." *AO Techsnabexport  v. Globe Nuclear Servs. & Supply, Ltd,* 656 F. Supp. 2d 550, 554 (D. Md. 2009) (internal citation and quotation marks omitted). "[A]n arbitrator's fact finding and contract interpretation [are] accorded great deference [along with her] interpretation of the law." *Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991).   A court's power to vacate an arbitration award is narrowly circumscribed; it can be exercised only to correct mistakes, or to provide relief when fraud, corruption, or denial of due process has tainted the legitimacy of the award*. Blitz v. Beth Isaac Adas Isr. Congregation*, 115 Md. App. 460, 694 A.2d 107(1997).

Appellants relied on the 2006 Employment Agreement entered into by the parties to commence arbitration.   JA 247.   Appellants also relied on the 2009 Release Agreement to resolve "any and all" controversies by arbitration.   JA 251. Dewan claims that he is neither a party to the 2006 Employment Agreement nor to the 2009 Release Agreement.   Dewan filed for arbitration as an individual.   JA

13

267. Also, Dewan is identified as an intended third-party beneficiary in the 2009 Release Agreement. JA 114; 210. Therefore, Dewan, as an individual, was a proper party to the arbitration.

In Maryland, "[c]ourts generally refuse to review arbitration awards on the merits, reasoning that the parties are required 'to submit to the judgment of the tribunal of their own selection and abide by the award.'" *Int'l Ass'n of Firefighters, Local 1619 v. Prince George's County,* 74 Md. App. 438, 538 A.2d 329, 332 (1988) (quoting *Roberts Bros. v. Consumers' Can Co.*, 102 Md. 362, 369, 62 A. 585 (1905)).

The Maryland Uniform Arbitration Act ("MUAA"), MD Code, Courts and Judicial Proceedings §§ 3-201 *et. seq.*, is the "state analogue" of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.  Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735, 742 (2005). Judicial review of an arbitration award under the MUAA is "specific, extremely limited . . . such that any post-arbitration proceeding will not constitute a renewed adjudication of the merits of the controversy." *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 43 A.3d 1029, 1038 n. 7 (2012).

The District Court on *de novo* review of the record found substantial support for the decisions made by the Arbitrator, that *the Arbitrator did not go beyond the*

14

*scope of the submissions, and that the Arbitrator's determinations were not arbitrary.* JA 224; 278-280.

The Arbitrator had jurisdiction to render an award of damages on Walia's INA-related claims because neither 8 U.S.C. § 1182(n) nor the case law interpreting the statute preclude arbitration of claims arising under the statute. The Arbitrator thus did not manifestly disregard the law in rendering an award of damages on Walia's INA-related claims.

The Arbitrator did not exceed her powers in awarding damages to Walia despite an enforceable release agreement where: 1) the severance payment of $7,000 violated the Maryland Wage Payment and Collection Act, MD Code, Labor and Employment §§ 3-501 *et seq.* ("MWPCA"), by paying Walia much less than he was owed at the alleged termination of his employment in Fall 2009; 2) Dewans failed to advise Walia to seek independent counsel before signing the 2009 Release Agreement; and 3) Appellants engaged in fraudulent and malicious actions both in inducing Walia to sign the Release Agreement and then in presenting evidence in arbitration seeking to enforce the Release Agreement without paying Walia wages owed him.

## STANDARD OF REVIEW

On appeal from a district court's denial of vacatur, this Court reviews *de novo* the district court's legal rulings. *Three S. Del., Inc. v. DataQuick Info. Sys.,*

15

*Inc.*, 492 F.3d, 520, 527 (4th Cir. 2007) (citing *Pattern v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006)).  Judicial "[r]eview of an arbitration award is severely circumscribed."  *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998).  "A court sits to determine only whether the arbitrator did his job – not whether he did it well, correctly, or reasonably, but simply whether he did it."  *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir. 2000) (quoting  *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 76 F.3d 606, 608 (4th Cir. 1996)).

Maryland state law applies to substantive law issues in this diversity action. *See Johnson's v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir. 1992) ("The principles of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require a federal court in a diversity case to respect and enforce state-created rights in a manner such that litigation of state-based rights in federal court does not yield results materially different from those attained in the state courts. The Supreme Court, addressing the substantial variations that were then perceived between state and federal litigation, overruled the rule of *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), and established a rule, without drawing hard lines, that 'federal courts are to apply state 'substantive' law and federal 'procedural' law.' *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8) (1965).")

16

The grant of a F.R.C.P. 12(b)(6) motion is an adjudication on the merits, unless the district court specifies the dismissal is without prejudice. *Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988); *Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir.), cert. denied, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977).

## ARGUMENT

**I.    The Arbitrator had the authority to render an award against Dewan, who was an essential and necessary party to the arbitration.**

On January 29, 2010, both *Dewan in his individual capacity and KMDCPA* commenced arbitration against Walia. They started arbitration by filing claims and demanding arbitration through the American Arbitration Association ("AAA"). JA 267. Dewan and KMDCPA jointly filed the complaint for arbitration against Walia. *Dewan's decision to choose arbitration to litigate disputes against him as an individual was not by accident but rather a conscious, intentional decision by none other than Dewan himself, who is both an attorney and a certified public accountant*. Thus, Dewan was an actual and necessary party to the arbitration action right from the outset.

Dewan made a well-informed choice to have allegations leveled against him decided by an arbitration tribunal as well. Appellants argue that Dewan entered his own individual name on the online form demanding arbitration upon AAA as a

17

representative only, which is inaccurate and untrue. The online filing form of

AAA asks if the filer is a claimant or representative. JA 267. The filer has to pick

one choice. Dewan made a well-informed choice to file his claims as a filer only.

The arbitration proceedings were captioned as *Kiran Dewan - Kiran M. Dewan,*

*CPA, PA v. Arun Walia. The column meant for representatives is blank.*

Furthermore, the online form also asks a question about persons to be included in

the case caption. Dewan chose: "Include in Caption: Both." JA 267. Thus, there

can be no doubt that Dewan made his well-informed choice to have the allegations

leveled against him decided by the Arbitration Tribunal.

　　　　The general rule is that one cannot be held to a contract to which he or she is

not a party. *Snider Bros. Inc. v. Heft*, 271 Md. 409, 414, 317 A.2d 848 (1974); *see,*

*e.g., MCR of Am., Inc. v. Greene*, 148 Md. App. 91, 111, 811 A.2d 331, 343 (2002)

("[p]rivate arbitration 'is a matter of contract'...'[a]n arbitration agreement cannot

impose obligations on persons who are not parties to it and who do not agree to its

terms.'" (citation omitted)).

　　　　However, a party may later accept or adopt a contract and thus be bound by

it. *See Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 409, 396 A.2d 1090

(1979); *Snider Bros. Inc. v. Heft, supra*; *see* also *Cochran v. Norkunas*, 398 Md. 1,

23, 919 A.2d 700 (2007) (distinguishing between manifestation of acceptance by

conduct from acceptance by silence). Thus, what constitutes acceptance becomes

18

the threshold question. Acceptance can be accomplished by acts as well as words; no formal acceptance is required. *Porter v. Gen. Boiler Casing Co.*, *supra*. Therefore, a manifestation of assent to be bound need not be in writing. It has long been settled that "an acceptance may be indicated by acts as well as words." *Duplex Envelope Co., v. Baltimore Post Co.*, 163 Md. 596, 605 (1933).

The filing of written claims by Dewan, on his behalf and on behalf of KMDCPA, and his demanding that AAA arbitrate disputes with Walia constitute an express adoption of the 2006 Employment Agreement and 2009 Release Agreement by Dewan. Walia asserts that a signature is not required in order to bring a contract into existence, nor is a signature always necessary to the execution of a written contract. The purpose of a signature is to demonstrate "mutuality or assent" which could as well be shown by the conduct of the parties. 17 C.J.S. Contracts § 62 at 732 (1963).

Maryland applies the objective standard as to the formation of contracts. *Ray v. Eurice,* 201 Md. 115, 127,93 A.2d 272 (1952); *National Fire Ins. Co. v. Tongue, Brooks & Co.*, 61 Md. App. 217, 225, 486 A.2d 212 (1984); *see Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 92, 283 A.D.2d 587 (N.Y. App. Div. 2002) (holding that the software license was accepted when the user clicked on the "I Agree" icon); *Motise v. America Online, Inc.*, 346 F. Supp.2d 563, 566 (S.D.N.Y. 2004) (holding that the plaintiff was contractually bound to the terms of his

father's AOL account by accessing the account as a sub-licensee); *see* also *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1450 (7th Cir. 1996) (upholding validity of a shrink-wrap license).

Moreover, the record reflects that Dewan, as the sole owner of KMDCPA and an attorney, drafted all the agreements signed between the parties and represented Walia in numerous immigration matters. JA 223; 292. The record also reflects that Dewan included binding arbitration provisions in both the 2006 Employment Agreement and the 2009 Release Agreement. JA 247; 251. Pursuant to these agreements, Dewan commenced arbitration proceedings on behalf of himself as an individual and KMDCPA against Walia under the AAA commercial rules. Dewan also selected Dr. McKissick as the Arbitrator. Only after Dewan anticipated the Arbitrator's decision swinging against him did he endeavor unsuccessfully to be dismissed as a party to the arbitration proceedings. Finally, having received an unfavorable result in the forum of his own choice, Dewan petitioned to the District Court. On seeing the Interim Award, Appellants changed their position and created impediments to issuance of the Final Award. The Arbitrator stated:

> Both Parties have now waived future hearings on this matter in lieu of the Arbitrator's consideration of this Motion for a Final Award. Although the Claimant initially preferred a Final Award and requested it at the 4-day hearing, the Claimant subsequently changed its position after the issuance of the Interim Award. JA 257.

Dewan chose himself to settle "any and all" claims and controversies arising against him also, as an individual, through the AAA arbitration tribunal. Thus, it was Dewan's own decision to choose arbitration. JA 267.[7] Furthermore, Appellants themselves have acknowledged that "…Dewan is identified in the Release Agreement as an intended third-party beneficiary of Walia's release." JA 114. Thus, Appellants have admitted that Dewan was an intended third party beneficiary of the agreements signed between the parties. This is an admission against interest. Moreover, Dewan's argument that he is not a proper party to the arbitration has already been rejected by the District Court. JA 210.

Furthermore, if parties to a contract clearly intended that a third party benefit from the contract, the third-party beneficiary may maintain an action on the contract without privity of contract. *Parlette v. Parlette*, 88 Md. App. 628, 637, 596 A.2d 665 (1991); *see Mayor of Rockville v. Walker*, 100 Md. App 240, 261, 640 A.2d 751 (1994); *see* also *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 ( D. Md. 2005), *quoting Md. Nat'l Bank v. Resolution Trust*

---

[7] Dewan argues that "In completing AAA's paperwork to commence litigation, Dewan identified himself thereon as a representative of KMDCPA, as Dewan understood that was required by AAA. But AAA classified him thereafter in the case caption as a party to the arbitration." It is noteworthy that Dewan is an attorney and CPA and not a lay person. Moreover, Dewan's credibility is impeached due to his perpetration of numerous frauds. Dewan's conduct is not an aberration. In fact, he engaged in a wide-ranging fraud against Walia – including falsification of documents, destruction of evidence and perjured testimony to intentionally harm Walia's financial interests.

21

*Corp.,* 895 F. Supp. 762, 772 (D. Md. 1995) ("'Maryland law has long allowed plaintiffs to sue for injuries caused by fraudulent misrepresentations made to third parties,' so long as the plaintiff could reasonably have been expected to act or refrain from action in reliance upon the misrepresentation."). The primary source for determining whether the parties intended a third party to have standing to enforce the contractual provisions is the language of the contract itself. *See Little v. Union Trust Co.*, 45 Md. App. 178, 181, 412 A.2d 1251 (1980) (quoting *Shillman v. Hobstetter*, 249 Md. 678, 688, 241 A.2d 570 (1968).

A statement in *Missler v. Anne Arundel County*, 271 Md. 70, 80, 314 A.2d 451, 457 (1974), is apposite:

> When, as we think, exists in this case, doubt arises from the writing itself as to what the parties meant by the language employed, extraneous evidence of what the words and actions of the parties would reasonably induce another to believe was intended may be admitted to assist the court in determining what was in fact agreed to by the parties. *Allen v. Steinberg,* 244 Md. 119, 127, 223 A.2d 240 (1966); *McKeever v. Realty Corp.*, 183 Md. 216 37 A.2d 305 (1944).

Thus, Dewan became an essential and necessary party to the arbitration proceedings from the very outset of arbitration by his own choice. Accordingly, there is sufficient evidence that Dewan adopted or assented to the agreement for arbitration or, in the alternative, he was an intended beneficiary of the 2006 Employment Agreement and the 2009 Release Agreement, both drafted by himself.

The Final Award should not be disturbed "(a) so long as the interpretation was not arbitrary; (b) even where the award permits an inference that the arbitrator may have exceeded its authority; or (c) merely because the court believes that sound legal principles were not applied." *Communications Equipment Workers, Inc. v. Western Elec. Co.*, 320 F. Supp. 1277, 1279 (D. Md. 1970), aff'd, 1971 WL 2967 (4th Cir. May 27, 1971) (citations omitted). However, a court may interfere with an award "where the arbitrator (a) clearly went beyond the scope of the submission; (b) where the authority to make the award cannot be found or legitimately assumed from terms of the arbitration agreement; or (c) if the arbitrator made a determination not required for a resolution of the dispute." *Id.*, 320 F. Supp. at 1280 (citations omitted). The District Court thoroughly reviewed the record *de novo* and found substantial support for the decisions made by the Arbitrator. JA 278-280.

Further, the District Court found "that the arbitrator did not go beyond the scope the submissions, and that the arbitrator's determinations were not arbitrary." JA 224. *Moreover, the District Court also observed that Appellants did not meet their heavy burden of proof with respect to any of the applicable grounds to vacate an arbitration award under the MUAA.* JA 224. Thus, Appellants' argument that Dewan was not properly a party to the arbitration proceedings is without merit.

23

## II.  The Arbitrator had jurisdiction to render an award on Walia's INA-related claims based on agreements between the parties.

Appellants argue that the Final Award should be vacated because the Arbitrator lacked jurisdiction to render an award on Walia's INA-related claims.  This issue was repeatedly litigated both in arbitration and the District Court.  Both the arbitration tribunal and the District Court rejected Appellants' argument, as the arbitration action was commenced by Appellants pursuant to the 2006 Employment Agreement and the 2009 Release Agreement.  JA 223.  The District Court on *de novo* review of the record found substantial support for the decisions made by the Arbitrator, that *the Arbitrator did not go beyond the scope of the submissions, and that the Arbitrator's determinations were not arbitrary.*  JA 224; 278-280.

Pursuant to the arbitration clauses in these two agreements (JA 247; 251), Appellants commenced arbitration, and Walia filed his counterclaims against both of them.  The arbitration clauses cover 'any claim or controversy' between Appellants and Walia.  Appellants now argue that the proper forum for resolving Walia's claims was before the U.S. Department of Labor pursuant to 8 U.S.C. § 1182 (n).   But in this case, Appellants themselves commenced arbitration on January 29, 2010.  The clear wording of the statute and the case law does not stop the arbitration of any and all disputes between the parties based on contracts between parties. The 2006 Employment Agreement and 2009 Release Agreement

were drafted by Dewan himself and presented to Walia for his signatures.  JA 223; 292.  Thus, Appellants themselves submitted to the jurisdiction of the AAA arbitration tribunal for all claims and controversies, including any and all types of counterclaims, pursuant to the agreements between the parties.

Three cases cited by Appellants, *Newcome v. Esrey, 862 F.2d. 1099 (4th Cir. 1988) ("Newcome"); Hooters of America, Inc. v. Phillips,* 173 F.3d 933 (4th Cir. 1999) ("Hooters"); and *Dale v. Pru-Bache Secur. Inc*., 719 F.Supp.2d 1164 (E.D. N.Y. 1989) ("*Dale*"), are not helpful to Appellants.  In *Newcome*, this Court found there was no private cause of action under the relevant statute, section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), yet still found the statutory claim to be arbitrable under the parties' arbitration agreement.  *Newcome v. Esrey*, *supra*, 862 F.2d at 1011.  In *Hooters*, this Court found no agreement between the parties to arbitrate, and the case involved no statute not providing for a private cause of action.  The *Dale* case involved the same statute as in *Newcome*.

Also, the holding in *Venkatraman v. REI Sys., Inc*., 417 F.3d 418 (4th Cir. 2005) ("*Venkatraman*"), is distinguishable as arbitration was not an issue in *Venkatraman*.  Although the *Venkatraman* Court found that the INA *affords no private right of action, it did not preclude arbitration of claims under the INA*.

To support their assertion that there is no private cause of action for such claims, Appellants also cite *Watson v. Bank of America*, 196 Fed. Appx. 306 (5th

25

Cir. 2006); *Chavez v. Freshpict Foods, Inc*., 456 F.2d 890 (10th Cir. 1972); *Biran v. JP Morgan Chase & Co*., 2002 U.S. Dist. LEXIX 17076 (S.D.N.Y. Sept. 12, 2002); *Shah v. Wiclo Sys., Inc*. 126 F. Supp. 2d 641, 647 (S.D.N.Y. 2000); *Mate v. Richard Dattner Architects*, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); *Collyard v. Washington Capitals*, 477 F.Supp. 1247, 1254 (D. Minn. 1979); and *Dowling v. United States*, 476 F. Supp. 1018, 1020-1021 (D. Mass. 1979). In none of these cases was arbitration at issue. Similarly to *Venkatraman*, none of these courts held that the INA precluded arbitration of a wage related claim arising under it.

Further, Maryland courts have held that arbitrators exceed their jurisdiction by refusing to consider all claims that are properly before them. *See McKinney Drilling Co. v. Mach I Ltd. Partnership,* 32 Md. App. 205, 211, 359 A.2d 100 (1976); *Snyder v. Berlinger Constr. Co.,* 79 Md. App. 29, 37-38, 555 A.2d 523, cert. denied, 316 Md. 550, 560 A.2d 1118 (1989). In the instant case, the Arbitrator properly considered Walia's counterclaims against both Appellants, as these claims were before the arbitration tribunal. Thus, the Arbitrator did not exceed her powers.

Appellants also argue that there was and could be no agreement to arbitrate claims arising under 8 U.S.C. §1182(n). Appellants' argument is without merit. "Courts must judicially accept arbitrary interpretation of contract by an arbitrator." *O-S Corp. v. Samuel A. Kroll, Inc*., 29 Md. App. 406, 410, 348 A.2d 870 (1975),

26

cert. denied, 277 Md. 740 (1976); *Southern Md. Hosp. Ctr. V. Edward M. Crough, Inc.*, 48 Md. App. 401, 408, 427 A.2d 1051(1981), cert. denied, 290 Md. 721 (1981).

Walia's counterclaims against Appellants were raised pursuant to agreements of the parties to resolve "any and all disputes or controversies. . ." by arbitration under AAA rules.  Thus, Appellants' argument fails as Walia's wage related claims were heard by the arbitration tribunal during the course of four full-day hearings in February and March 2011.  The District Court also found, after performing *de novo* review, that the Arbitrator had jurisdiction to hear Walia's wage related claims.  JA 278-280.

There is no error of law on this point.  It is true that Walia was aware of his right to file a complaint with the Administrator of the U.S. Department of Labor ("DOL").  On February 8, 2010, Walia did file a complaint with the DOL's Wage & Hour Division.  The DOL's investigation was primarily limited to the issue of violation of attestations of the LCA.  In fact, DOL had concluded its investigation in March 2011, before the Interim Award was issued in July 2011. The Administration made a determination of "no violation".  However, this determination was based on a limited review of LCA violations and not on the contractual issues between the parties.

27

Moreover, Appellants have failed to note that the Administrator's determination was based on "doctored documents" produced by Appellants during the investigation without Walia having the opportunity by March 2011 to prove the fraudulent nature of these documents.[8]  Walia had requested the records pertaining to all immigration-related petitions to the Department of Homeland Security ("DHS") under FOIA.  DHS routinely takes between 1-2 years to respond to FOIA requests. Dewan, who is an immigration attorney, knew very well that it would be almost impossible for Walia to obtain documents during the time frame while the case was going forward.

However, Walia used the services of the Ombudsman, USCIS, to obtain documents under FOIA and did receive them in May 2011 before the filing of the closing brief to the arbitration tribunal, but after the DOL's determination was made in March 2011. The documents received under FOIA demonstrated wholesale falsification of documents by Appellants.  In view of the foregoing, Appellants managed to receive a "no violation report" from the DOL based on Dewan's fraudulent representations.  Walia contends that DOL's finding would have been different if he had had the time to receive documents pursuant to his

---

[8] Walia posits that no objective observer of the record can fail to note the absence of any mention of Appellants' numerous fraudulent actions in their Opening Brief. There can be doubt that these fraudulent actions had much to do with the adverse decisions that Appellants are now appealing.  Yet, Appellants now argue as though these fraudulent actions had nothing to do with either the adverse decisions against them or the law governing the legal issues involved in these adverse decisions.

FOIA request to prove that Dewan's representations were fraudulent. Walia filed

an appeal to the Department of Labor, Office of Administrative Law Judges, in

Washington, DC, against the DOL's determination.[9]

The agreement between the parties was to arbitrate any dispute or

controversy, whether covered under 8 USC §1182(n) or not. The binding

arbitration is mandated not only due to one but two agreements entered into

between the parties. The arbitration clauses incorporated both in the 2006

Employment Agreement and 2009 Release Agreement include the following

language:

> "Any claim or controversy that arises out of or relates to this
> agreement, or the breach of it, shall be settled by arbitration in
> accordance with the rules of the American Arbitration Association."
> JA 247; 251.

Under §3-207 of the MUAA, a party may petition a court to order arbitration

if the other party to an arbitration agreement described in §3-202 refuses to

arbitrate. MD Code, Courts & Judicial Proceedings §§ 3-202; 3-207 (a); *Brewster*

*v. Woodhaven Bldg. & Dev., Inc*., 360 Md. 602, 759 A.2d 738, 753 (2000). In

determining whether to order arbitration, the court is confined to the resolution of a

single issue, to wit: Is there an agreement to arbitrate the subject matter of the

---

[9] On November 19, 2012, Walia successfully dismissed this appeal, primarily
based on the District Court's September 21, 2012 Memorandum and Order
confirming and enforcing the final arbitration award, which made the DOL appeal
redundant.

dispute? *Montgomery County v. FOP Montgomery County Lodge* 35, 147 Md. App. 659, 810 A.2d 519, 523 (2002); *RTKL Associates v. Baltimore County*, 147 Md. App. 647, 810 A.2d 512, 517 (2002); *Mattingly v. Hughes Electronics Corp.*, 147 Md. App. 624, 810 A.2d 498, 504 (2002) ("When there is a dispute of fact material to determining whether there is an agreement to arbitrate, the court resolves that dispute before determining whether the agreement to arbitrate exists. *See Stephen L. Messersmith*, 313 Md. At 664, 547 A.2d 1048 [1988] ('After receiving…evidence, the court shall decide by a preponderance of the evidence whether an agreement to arbitrate exists.')").

Where the language of the arbitration agreement is clear, and it is plain that the dispute is within the scope of arbitration, arbitration should be compelled. *NRT Mid-Atlantic, Inc. v. Innovative Props., Inc*., 144 Md. App. 263, 797 A.2d 824, 834 (2002). Where there is a broad arbitration clause calling for the arbitration of any and all disputes arising out of the contract, all issues may be arbitrated unless they are expressly and specifically excluded. *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104, 468 A.2d 91(1983). In addition to finding a binding arbitration, a court must decide whether the claims at issue fall within the scope of that agreement. *The Redemptorists v. Coulthard Servs*., 145 Md. App. 116, 135, 801 A.2d 1104 (2002). Therefore, a court must resolve any doubts concerning the

scope of the arbitrable issues in favor of arbitration, reflecting a strong public policy in favor of arbitration.

An agreement to arbitrate can include statutory claims. This was made clear in *Gilmer v. Interstate-Johnson Lane, Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991): "It is by now clear that **statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."** (emphasis added)  The courts have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U.S.C. §§ 1-7; §10 (b) of the Securities Exchange Act of 1934, 15 U.S.C § 78j(b); and the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 USC §§ 1961 *et seq.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 615, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985).  The Supreme Court has held that judicial protection of arbitral agreements extends to agreements to arbitrate statutory discrimination claims. In *Gilmer v. Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. at 26, the Supreme Court noted that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo, the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.'" (alteration in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, *supra*, 473 U.S. at 628).

Indeed, in employment disputes the Supreme Court has rejected "the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

The Arbitrator also ruled that: "These arbitral remedies are exclusive of the statutory remedies of the Immigration and Nationality Act (INA) 8 USC §1182(n)". JA 256; 259. The Arbitrator further stated in the Final Award:

> As noted earlier in my Interim Award, a private arbitration covering subject matters beyond the scope of the immigration statute can co-exist with the United States Citizenship and Immigration Services via the Department of Homeland Security (Department of Labor) investigations. That is, an arbitration tribunal whose scope is expansive, far beyond the province of the statute, can have concurrent, but separate and independent remedies. JA 258.

"A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law." *Upshur Coals Corp. v. United Mine Workers of America*, *supra*. It is well established that judicial review of an arbitration award is "extremely limited" and is "among the narrowest known to the law." *See U.S. Postal Service v. Am. Postal Workers Union*, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000).

Appellants fail to show an "error of law" and their argument fails because of deferential review by the court to the Arbitrator's award. Two centuries ago, the Supreme Court expounded upon courts' deferential review in *Burchell v. Marsh*, 58 U.S.344, 349-50, 17 How. 344 (1854):

32

Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. In order, says Lord Thurlow, (*Knox v. Symmonds*, 1 Ves. Jr. 369) 'to induce the court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of an award, or to be made out be evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award.'

The Arbitrator did understand the issues and concluded correctly that "[T]hese arbitral remedies are exclusive of the statutory remedies of the Immigration and Nationality Act (INA) 8 USC §1182(n)". JA 256. The compensatory damages awarded by the Arbitrator are based on the agreements between the parties and thus did not exceed her jurisdiction.

Appellants' argument that Walia's claims for payment of wages fall solely under the purview of the U.S. Department of Labor is simply untrue. The parties agreed that "[a]ny claim or controversy that arises out of or relates to this agreement, or the breach of it, shall be settled by arbitration…" JA 247. This Court has characterized similar formulations as "broad arbitration clauses of an expansive reach." *American Recovery Corporation v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). In *Prima Paint Corp. v. Flood &*

33

*Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court characterized as "broad" a clause that required arbitration of "[a]ny controversy or claim arising of or relating to this Agreement." *See* also *J.J. Ryan & Sons v. Rhone v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)(same). The arbitration clause here at issue is much broader than clauses found in many contracts. In fact, the "arising out of or relating to" language found in the agreement is the formulation recommended by the American Arbitration Association. *See Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir. 1983).

Maryland's public policy favors arbitration of all disputes including statutory claims. Therefore, *Appellants have not shown that the INA precludes the use of arbitration to resolve claims arising under 8 U.S.C. § 1182(n).*

### III. The Arbitrator did not exceed her powers in awarding damages despite an enforceable release agreement.

Walia argues that the award of damages despite an enforceable release agreement can be amply justified because: 1) the severance payment of $7,000 violated the MWPCA by paying Walia much less than he was owed at the time of alleged termination of his employment in August 2009; 2) Dewan failed to advise Walia to seek independent counsel before signing the 2009 Release Agreement; and 3) Appellants' committed fraudulent and malicious actions both in coercing Walia to sign the Release Agreement and then in presenting evidence in arbitration

34

in seeking to enforce the Release Agreement without paying Walia wages owed him. **Initially, it must be noted that arbitrators are not required to explain their reasoning as they have broad discretion in fashioning a remedy for any injustice which has occurred**. *Baltimore County v. Baltimore,* 329 Md. 692, 708, 621 A.2d 864 (1993). Further, if a release is obtained by fraud, it may be set aside for this reason. *Spitze v. Baltimore & O Railroad Co.*, 75 Md. 162, 23 A. 307 (1892).

Walia was presented with an agreement drafted by Dewan in Dewan's own office and asked to sign it or leave it. The 2009 Release Agreement signed by Walia purported to release and discharge Appellants for "claims arising under federal, state and local statutory or common law, including, but not limited to, the Age Discrimination in Employment Act ("ADEA"), Title VII of Civil Rights Act of 1964, claims for wrongful discharge under any public policy or any policy of the Company. . .". JA 250.

Dewan represented both KMDCPA and Walia as to the 2009 Release Agreement in a blatant conflict of interest. Yet, there is nothing in the record to demonstrate that Dewan advised Walia to seek the advice of independent counsel as to waiver of his past and future claims, as he should have. *See* Maryland Rule of Professional Conduct 1.8(a)(3). *There is no statement in the Release Agreement drafted by Dewan that Walia was advised to seek the advice of independent counsel.*

35

Also, in most circumstances, the employee must be given a reasonable length of time to sign a severance agreement. For example, the Older Workers Benefit Protection Act of 1990, ("OWBPA"), 29 U.S.C. §§ 621 *et seq*., which amended the Age Discrimination in Employment Act, established specific requirements for such waiver. *See* 29 U.S.C. § 626(f). OWBPA provides an employee at least 21 days to consider signing a severance agreement. 29 U.S.C. § 626(f)(1)(F)(i). The statute also provides that the waiver must specifically state that it is revocable for a period of at least seven days during which the employee may reconsider or revoke his/her signature. 29 U.S.C. § 626(f)(1)(G).

Walia did not discover his wage claims until after he signed the 2009 Release Agreement, as drafted by Dewan. After he signed the 2009 Release Agreement, Walia consulted an attorney to evaluate his situation. Only then did he learn that his wage claims greatly exceeded the $7,000 payment provided for in the 2009 Release Agreement.

The circumstances under which an arbitration award may be vacated are very narrow. *Graceman v. Goldstein,* 93 Md. App. 658, 666, 613 A.2d 1049 (1992), cert. denied, 329 Md. 336, 619 A.2d 546 (1993). A court's power to vacate an arbitration award is narrowly circumscribed; it can be exercised only to correct mistakes, or to provide relief when fraud, corruption, or denial of due process has tainted the legitimacy of the award. *Blitz v. Beth Isaac Adas Isr.*

*Congregation, supra*, 115 Md. App. at 475.  The Maryland General Assembly restricted grounds upon which a court might vacate an arbitration award and expressly proscribed any possibility of a substitution of a reviewing court's judgment for that of the arbitrators.  *O-S. Corp v. Samuel A. Kroll, Inc*., *supra*, 29 Md. App. at 407-08; *Nick-George Ltd. Partnership v. Ames Ennis, Inc.,* 279 Md. 385, 389, 368 A.2d 1001(1977).

"After arbitration, a court shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief." *Rourke v. Amchem Prods., Inc*. 153 Md. App. 91, 835 A.2d 193, 214 (2003), aff'd, 384 Md. 329, 863 A.2d 926 (2004).  Specifically, "under the MUAA, factual findings by an arbitrator are virtually immune from challenge and decisions on issues of law are reviewed using a deferential standard on the far side of the spectrum away from a usual, expansive *de novo* standard." *Mandl v. Bailey*, 159 Md. App. 64, 858 A.2d 508, 525 (2004) (citation omitted) (emphasis in original). "Only a completely irrational decision by an arbitrator on a question of law, so extraordinary that it is tantamount to the arbitrator's exceeding his powers, will warrant the court's intervention." *Id.* (emphasis added).  Furthermore, the party moving to vacate an arbitration award bears the 'heavy burden' of showing that the award is invalid. *See Baltimore Teachers Union, Am. Fed. Of Teachers, Local 340*

*v. Mayor of Baltimore*, 108 Md. App. 167, 182, 671 A.2d 80, 87 (1996), *cert.* denied, 342 Md. 472, 677 A.2d 565 (1996).

The MWPCL requires an employer to pay an employee all wages due at the termination of his employment. MD Code, Labor and Employment § 3-505(a). Further, an employer's violation of the MWPCL without a legitimate *bona fide* reason subjects the employer to treble damages for withheld wages. MD Code, Labor and Employment § 3-507.1. A prevailing plaintiff is also entitled to attorney's fees and costs. MD Code, Labor and Employment § 3-507.1(b). The relationship between KMDCPA and Walia is governed by Maryland law pursuant to the 2006 Employment Agreement. JA 248. Walia contends that, pursuant to the MWPCA, even a waiver signed by the employee shall not release an employer from liability for wages owed to the employee in Maryland. Further, it is critical that consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *See Smith v. Amedisys*, 298 F.3d 434, 441 (5th Cir. 2002).

Waivers and releases of liability are valid when the release language is "lawful and unambiguous," and the decision to enter into the agreement is "knowing and voluntary." *See Thomforde v. IBM Corp.,* 406 F.3d 500, 502-503 (8th Cir. 2005); *Moldauer v. Canandaigua Wine Co*., ARB No. 04-022, ALJ No. 2003-SOX-026, slip op. at 16-18 (ARB Dec. 30, 2005 (concurring opinion)).

38

Courts consider the following factors in determining whether the agreement was signed knowingly and voluntarily: (1) Whether it was written in a manner that was clear and specific enough for the employee to understand based on his education and business experience; (2) Whether it was induced by fraud, duress, undue influence, or other improper conduct by the employer; (3) Whether the employee had enough time to read and think about the advantages and disadvantages of the agreement before signing it; (4) Whether the employee consulted with an attorney or was encouraged or discouraged by the employer from doing so; (5) Whether the employer offered the employee consideration (*e.g.*, severance pay, additional benefits) that exceeded what the employee already was entitled to by law or contract and the employee accepted the offered consideration. *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015, 1017 (5th Cir. 1990). The party asserting the validity of the waiver –*i.e.*, Appellants here – has the burden of proving that the waiver was knowing and voluntary. *See* 29 U.S.C. §626(f)(3).

In the instant case, the 2009 Release Agreement provided for Walia to receive far less in compensation than he was entitled to under his employment agreements and the MWPCA. Thus, KMDCPA owed Walia wages far in excess of $7,000 at the time of the signing of the 2009 Release Agreement, and Walia did not waive this claim by signing an unknowing release, especially when Walia was benched by KMDCPA without the payment of any wages or the issuance of a

termination letter or a resignation letter.  The MWPCA thus renders the 2009 Release Agreement unenforceable to set aside Walia's claim for wages.

Second, Walia lacked a reasonable opportunity to consult with independent counsel before signing the Release Agreement.  JA 204.  On the other hand, Dewan represented to Walia that the Release Agreement prepared by him was in Walia's favor, although it limited Walia to receipt of only $7,000 for release of all his claims (claims that were not even then defined) which were worth well into six figures.  Walia is a CPA and has a Master's Degree in Public Administration, but he was under a disabling medical condition due to ongoing radiation therapy to treat his thyroid cancer.  He was weak both physically and mentally, and Appellants took advantage of his medical disability.  Moreover, he trusted representations made by Dewan to him that the 2009 Release Agreement was in his favor.

Associate Chief Administrative Law Judge, Paul C. Johnson, Jr., Department of Labor, who was to decide Walia's complaint against DOL's adverse determination spoke at length, while ruling on Dewan's motion to dismiss, about the validity of waivers and releases:

> [I]t is clear that there is a dispute of material fact whether Walia made a knowing and voluntary decision to enter into the severance agreement.  He was not represented by counsel, and according to him (and the severance agreement contains no language to the contrary) he was not given the opportunity to consult with counsel before executing the agreement.  JA 204.

40

Third, the Arbitrator found Appellants to have acted fraudulently and maliciously, both as to the 2009 Release Agreement and in presentation of evidence in arbitration to attempt to limit liability for wages owed. Concerning the 2009 Release Agreement, it facially overreaches to exculpate Appellants as to even future prospective claims by Walia and extreme forms of intentional harm such as fraud. The release was clearly designed to enable Appellants unscrupulously to avoid paying Walia for wages owed. At the time of the signing of the 2009 Release Agreement, Walia's wage claims were unknown and undiscovered by him. Yet, Dewan led Walia to believe that the 2009 Release Agreement was in Walia's best interests.

Regarding Appellants' fraudulent and malicious actions uncovered during the arbitration, the Arbitrator held that: 1) Dewan submitted materially altered income tax returns of KMDCPA in an effort to diminish Appellants' liability to Walia (JA 258), 2) Dewan had spoliated the 2009 Employment Agreement signed by Walia from his hospital bed (JA 258), and 3) Dewan had forged Walia's minor daughter's signature on an immigration benefit application filed with the USCIS under penalty of perjury (JA 161). Thus, the Arbitrator found Appellants' entire dealings with Walia to be permeated with fraud and malice and awarded punitive damages.

41

In sum, the Arbitrator had ample basis and legal justification for awarding Walia both compensatory and punitive damages in spite of the release because of: a) the wages owed Walia being greatly in excess of $7,000, b) Dewan's failure to advise Walia to seek independent counsel before signing the 2009 Release Agreement, c) Dewan's failure to give Walia even a few hours to think about signing the 2009 Release Agreement, d) Dewan's failure to incorporate a clause allowing Walia to revoke the agreement within a few days of its execution, e) Dewan's spoliation of the 2009 Employment Agreement, f) Appellants' overarching fraud, forgery, falsification of documents, g) and malice by Appellants in both the signing of the 2009 Release Agreement and their effort during arbitration to prevent Walia from being paid the wages he was due under the written employment agreement.

### IV.    The Arbitrator did not manifestly disregard the law in awarding damages to Walia on his INA-related claims

Walia claims that the Arbitrator did not manifestly disregard the law in making an award on wage claims arising under 8 U.S.C. § 1182(n) where neither the statute nor the case law interpreting the statute preclude arbitration.[10]

In *Long John Silver's Restaurants, Inc. v. Cole,* 514 F.3d 345, 349-50 (4th Cir. 2008), ("*Long John Silver's Restaurants*") the Court adopted a two-part test

---

[10] Walia likewise asserts that the Arbitrator did not manifestly disregard the law in awarding damages despite the release, as argued *supra*.

that a party must meet in order for a reviewing court to vacate an arbitration award for manifest disregard of law: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator [ ] refused to read that legal principle." (citing to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).  The *Long John Silver's Restaurants* Court noted that, under this two-part test, proving manifest disregard required something beyond showing that the arbitrators misconstrued the law, especially given that arbitrators are not required to explain the reasoning.  *See id*., 514 F.3d at 349, 351-52.

The FAA notably does not authorize a district court to overturn an arbitral award just because it believes, however, strongly, that the arbitrator misinterpreted the applicable law.  *United Paperworkers Int'l Union v. Misco, Inc.*, 448 U.S. 29, 38, 108 S. Ct. 364, 98 L.Ed. 286 (1987).  When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way which they disagree.  *Cf.  Remmey v. Paine Webber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (explaining that arbitration is an alternative to litigation); *Safeway Stores v. A. Bakery & Confectionery Workers,* 390 F.2d 79, 84 (5th Cir.1968) ("The arbiter was chosen to be the Judge.  That Judge has spoken. There it ends.").  Any more probing review of arbitral awards

would risk changing arbitration from an efficient alternative to litigation into a vehicle for protracting disputes.

Neither 8 U.S.C. § 1182(n) nor the case law interpreting the statute have clearly defined that claims arising under the statute cannot be submitted to arbitration. The Arbitrator thus made no error in awarding damages on the wage claims.[11] Therefore, as there is no clear error, the judgment of the District Court should be affirmed.

## CONCLUSION

The District Court specifically stated that it thoroughly reviewed the record *de novo* and found that the parties entered into two binding arbitration agreements: the 2006 Employment Agreement and the 2009 Release Agreement. JA 223. The District Court also stated, after performing *de novo* review, that the Arbitrator had jurisdiction to hear Walia's counterclaims. JA 278-280. The cases cited by Appellants regarding lack of a private right of action for claims arising out of 8 U.S.C. § 1182(n) are inapposite, as in all these cases, the courts did not preclude arbitration of claims under this statute. Further, Walia's claims were broad and

---

[11] Similarly, the Arbitrator did not manifestly disregard the law in awarding damages despite the release in view of the wages owed Walia greatly exceeding $7,000 in violation of the MWCPA, the failure to advise Walia to seek independent counsel before signing the 2009 Release Agreement, and the numerous fraudulent and malicious actions of the Appellants in coercing Walia to sign the 2009 Release Agreement and then presenting fraudulent evidence in arbitration in seeking to enforce the 2009 Release Agreement without paying him the wages owed him.

44

fully set forth in the 2006 Employment Agreement. Appellants commenced the arbitration proceedings in January 2010 by asking AAA to arbitrate 'any and all disputes and controversies' pursuant to the 2006 Employment Agreement. The phrase "arising out of or relating to" has been held to include within its ambit "every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute." *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006).

Thus, the Arbitrator's award is based on the contractual obligations of the parties. The Arbitrator, who worked on the case for 17 months from July 2010 to November 2011, reviewed more than eighty motions filed by the parties. Most of these motions were necessitated due to fraudulent misrepresentations and falsification of documents by Appellants. The Arbitrator held the Appellants to have acted fraudulently. The District Court fully reviewed *de novo* the findings of the Arbitrator and correctly and properly held that the Arbitrator did not exceed her authority, lack jurisdiction, make an irrational award or evidence a manifest disregard of the law.

The District Court did not err in refusing to vacate the Final Award on any of the numerous grounds listed by Appellants. Appellants' allegations that the District Court erred in refusing to vacate the Final Award amounts to nothing more than the Appellants' disagreement with the Arbitrator's and District Court's

45

findings. The District Court considered the record before it, performed *de novo* review, and rendered its decision.

Appellants cannot point to any instance where the District Court abused its discretion in dismissing Appellants' case with prejudice about the allegations concerning the arbitration tribunal. See *Robb v. Amataex Corp.*, 769 F.2d 996, 999 (4th Cir. 1985). Upon final analysis, one can only conclude that Appellants want this Court to substitute its views for the sound decisions of the Arbitrator and the District Court. Therefore, the District Court's judgments should be affirmed in their entirety.

## **REQUEST FOR RELIEF**

For all the above stated reasons, the Appellee Walia respectfully requests that the Court affirm the decisions of the District Court.

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellee Walia does not oppose Appellants' request for oral argument.

Respectfully submitted,

     /s/ Mark G. Chalpin     
Mark G. Chalpin
Maryland District Court Bar No. 14552
116 Billingsgate Lane
Gaithersburg, MD 20877
Tel: (301) 990-4900
Fax: (832) 201-7392
Email: mark.chalpin@gmail.com

46

/s/ Ramesh Khurana

Ramesh Khurana
Maryland District Court Bar No. 17797
15883 Crabbs Branch Way
Rockville, MD 20855
Tel: (301) 548-9595
Fax: (301) 548-9574
Email: rk@skulaw.com

*Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   __x__ The brief contains <u>11,147</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

   _____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   __x__ The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2007 </u> in a <u>14 point Times New Roman</u> font or

   _____ The brief has been prepared in a monospaced typeface using <u>MS Word 2002 </u> in a ___ characters per inch_____ font.

   Dated: February 19, 2013

   <u>/s/ Mark G. Chalpin_</u>                    <u>/s/ *Ramesh Khurana*</u>
   Mark G. Chalpin                         Ramesh Khurana

   *Counsel for Appellee*

48

# United States Court of Appeals
## for the Fourth Circuit
*Dewan v Walia*, No. 12-2175

### <u>CERTIFICATE OF SERVICE</u>

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MARK G. CHALPIN, Attorney for Appellee to print this document.  I am an employee of Counsel Press.

On **February 19, 2013**, Counsel for Appellee has authorized me to electronically file the foregoing **Brief for Appellee** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Paul S. Schleifman, Esq.
> Schleifman & Komis, PLLC
> 1600 Wilson Boulevard
> Suite 905
> Arlington, VA 22209
> 703-528-1021
> Email: pschleifman@schleifmanlaw.com

Additionally, a paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

February 19, 2013                                        /s/ Elissa Matias
                                                                     Counsel Press