RECORD NUMBER: 12-2175

# United States Court of Appeals

*for the*

# Fourth Circuit

**KIRAN M. DEWAN, CPA, P.A., A Maryland close corporation
and KIRAN MOOLCHAND DEWAN, a citizen of Maryland,**

*Appellants,*

– v. –

**ARUN WALIA, a non-resident alien, citizen of Canada,**

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# REPLY BRIEF OF APPELLANTS

PAUL S. SCHLEIFMAN
LAW OFFICE OF PAUL S.
SCHLEIFMAN, PLLC
1600 Wilson Boulevard, Suite 905
Arlington, VA 22209
T: (703) 528-1021
F: (703) 831-8949
pschleifman@schleifmanlaw.com.

*Counsel for Appellants*

# TABLE OF CONTENTS

**<u>PAGE</u>**

Table of Authorities ................................................................... ii

Argument................................................................................. 1

    I.     The Final Award Must Be Vacated as to Appellant Dewan as There Was No Written Agreement to Arbitrate Walia's Counterclaims............................................................... 1

    II.    The Arbitrator had no Jurisdiction to Hear Walia's INA-based claims for "wage shortfalls" and "back wages" .............. 4

    III.   The Final Award Is Completely Irrational Because it Includes Damages for Claims Walia Voluntarily Released and Waived Under An Agreement which the Arbitrator Found Was Valid and Enforceable ......................................... 10

    IV.   Walia's Counterclaims do Not Fall Within the Scope of the Settlement Agreement's Arbitration Provision Conclusion ... 15

Certification of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                           <u>**PAGE(S)**</u>

*Allstate Insurance Co., v. Stinebaugh,*
    374 Md. 631, 824 A.2d 87 (2003) ...................................................... 16

*Blum v. Blum,*
    59 Md. App. 584, 477 A.2d 289 (1984) ............................................ 11

*Bramble v. Thomas,*
    396 Md. 443, 914 A.2d 136 (2007) ...................................................... 2

*Buffalo Steel Co. v. Kirwan,*
    138 Md. 60, 113 A. 628 (1921) ............................................................ 2

*Calabi v. Government Employees Ins. Co.,*
    353 Md. 649, 728 A.2d 206 (1999) .................................................... 16

*Chertkof v. Harry C. Weiskittel Co.,*
    251 Md. 544, 248 A.2d 373 (1968) *cert. denied,*
    394 U.S. 974 (1969) ............................................................................ 14

*Clark v. Elza,*
    286 Md. 208, 406 A.2d 922 (1979) ............................................ 14, 15

*Cochran v. Norkunas,*
    398 Md. 1, 919 A.2d 700 (2007) .................................................... 3, 18

*Continental Milling & Feed Co. v. Doughnut* Corp.,
    186 Md. 669, 48 A.2d 447 (1946) ...................................................... 18

*Creel v. Lilly,*
    354 Md. 77, 729 A.2d 385 (1999) ........................................................ 2

*Curtis G. Testerman Company v. Buck,*
    340 Md. 569, 667 A.2d 649 (1995) ...................................................... 1

*Dale v. Pru-Bache Secur. Inc.,*
    719 F.Supp. 1164 (E.D.N.Y. 1989) ...................................................... 6

*Fidelity Deposit Company of Maryland v. Olney Associates, Inc*.,
    72 Md. App. 367, 530 A.2d 1 (1987) ................................................. 16

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) .................. 18

*Gilmer v. Interstate/Johnson Lane Corp*.,
    500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ........................ 7

*Hooters of America, Inc. v. Phillps*,
    173 F.3d 933 (4th Cir. 1999) ................................................. 6

*Joseph T. Trionfo & Sons v. Ernest B LaRosa & Sons, Inc.*,
    38 Md. App. 598, 381 A.2d 727 (1978) .......................................... 18

*Kunda v. C.R. Bard, Inc.*,
    671 F.3d 464 (4th Cir. 2011) ............................................... 13

*Newcome v. Esrey*,
    862 F.2d 1099 (4th Cir. 1988) ............................................... 5

*Pavel v. A.S. Johnson*,
    342 Md. 143, 674 A.2d 521 (1996) .................................................. 2

*Safeway Stores v. Altman*,
    296 Md. 486, 462 A.2d 829 (1983) ................................................. 3

*Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates*,
    313 Md. 652, 547 A.2d 1048 (1988) ................................................. 4

*Ventrakaman  v. REI Sys., Inc.,*
    417 F.3d 418 (4th Cir. 2005) ............................................... 6

iii

**STATUTES** **PAGE(S)**

Federal Arbitration Act, 9 U.S.C. §§101 ...................................... 17

Immigration and Nationality Act, 8 U.S.C. §1101 ............................ *passim*

Older Workers Benefit Protection Act of 1990, 29 U.S.C. §§621 ............. 12

Maryland Wage Protection and Collection Act, Md. Code,
Labor and Employment, §§3-501 ............................................... 13

Maryland Uniform Arbitration Act, MD Code, Courts and
Judicial Proceedings §§3-201 ..................................................... 17

**REGULATIONS** **PAGE(S)**

20 C.F.R. §655.815 ........................................................................ 8

## ARGUMENT

### I. The Final Award Must Be Vacated as to Appellant Dewan as There Was No Written Agreement to Arbitrate Walia's Counterclaims

In the Opening Brief, Appellant Kiran M. Dewan asserted the Arbitrator had no jurisdiction to render an award against him because he never entered into a written arbitration agreement with Walia. Walia does not dispute that Dewan signed the 2006 Employment Agreement and the Settlement Agreement solely as the President of Appellant Kiran M. Dewan, CPA, PA. Nor does Walia disagree that under settled Maryland law, an individual who signs an arbitration agreement on behalf of a disclosed principal is not bound to arbitrate claims against him personally. *Curtis G. Testerman Company v. Buck*, 340 Md. 569, 667 A.2d 649 (1995).

Walia nevertheless argues that Dewan adopted and became a party to both the 2006 Employment Agreement and the Settlement Agreement when he submitted the Online Filing Demand with the American Arbitration Association on January 29, 2010. Response Brief at 19. As noted in the Opening Brief at 9, Dewan entered his name on the online form since it asked for the name of a representative, but even were the Court to conclude Dewan asked the AAA to include him as a party to the Corporation's claims against Walia, that does not make him a party to the 2006 Employment Agreement, which was entered into four years earlier, or the Settlement Agreement, which was entered into in 2009.

1

In support of his argument that the mere filing of the Online Demand made Dewan a party to these agreements, Walia cites Maryland cases for the proposition that an offer may be accepted, and a contract formed, by the acts of a party and that a signature is not necessary.  Response Brief at 18-19.  Walia does not identify, however, the offer Dewan supposedly accepted when he filed the arbitration proceeding on behalf of the Corporation.  Dewan could not have been agreeing to assume the Corporation's obligations to Walia under the 2006 Employment Agreement when those obligations had already expired and were thereafter extinguished by the entry of the 2009 Settlement Agreement.  Nor does Walia address what offer Walia proposed and Dewan accepted related to the 2009 Settlement Agreement.

Under Maryland law, to establish a binding contract, there must be evidence of an offer and acceptance, and of a meeting of the minds as to the essential terms of the contract.

> Creation of a contract requires an offer by one party and acceptance by the other party.  See *Bramble v. Thomas*, 396 Md. 443, 455, 914 A.2d 136, 143 (2007); *Buffalo Steel Co. v. Kirwan*, 138 Md. 60, 64, 113 A. 628,630 (1921).  Acceptance of an offer is requisite to contract formation, and common to all manifestations of acceptance is a demonstration that the parties had an actual meeting of the minds regarding contract formation. *See Creel* [*v. Lilly*], 354 Md. [77] at 101, 729 A.2d [385] at 398 [(1999)] (reiterating that to establish a contract the minds of the parties must be in agreement as to its terms); *Pavel v. A.S. Johnson*, 342 Md. 143, 162-63, 674 A.2d 521, 531 (1996) (holding that no contract was formed because there was no meeting of the minds).

2

*Cochran v. Norkunas*, 398 Md. 1, 23, 919 A.2d 700, 713 (Md. 2007); s*ee also*

*Safeway Stores v. Altman*, 296 Md. 486, 489, 462 A.2d 829, 831 (1983).

Walia bases his contention that Dewan is a party to the 2006 and 2009

Agreements solely on Dewan's act of listing himself in the AAA Online filing

Demand. That mere unilateral act standing alone does not establish that the parties

had an actual meeting of the minds and that Dewan adopted and became a party to

the 2006 Employment Agreement or the 2009 Settlement Agreement.

There is also no merit in Walia's contention that the Arbitrator had

jurisdiction to award relief against Dewan because he is supposedly a third party

beneficiary of both agreements. As the sole support for this claim, Walia asserts

that Dewan admitted in the Amended Complaint that he is a third party beneficiary

of the 2009 Settlement Agreement. Response Brief at 21. Walia never explains

how the allegation that Dewan is a third party beneficiary of the release provision

in the Settlement Agreement makes him a third party beneficiary of the 2006

Employment Agreement. Nor does Walia dispute that, notwithstanding this

allegation, Dewan signed the Settlement Agreement in 2009 solely in his capacity

as the President of the Corporation. Walia agreed to release Dewan from any

claims Walia had related to his employment, but there is no written agreement

between Walia and Dewan containing an arbitration clause which binds Dewan to

arbitrate Walia's counterclaims. Furthermore, as set forth in Argument IV, *infra*,

the counterclaims asserted by Walia against Dewan clearly fall outside the scope of the Settlement Agreement's arbitration provision.

Finally, this Court should also reject Walia's contention that the Arbitrator's assertion of jurisdiction over Dewan should be given deference. Response Brief at 23. As the Maryland Court of Appeals has previously made clear, a deferential standard of review is appropriate "only where the parties indisputably agree to submit to arbitration." *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates*, 313 Md. 652, 659, 547 A.2d 1048, 1051 (1986). In instances where the arbitrator's very authority to hear a dispute is challenged, deference to the arbitrator's assertion of jurisdiction is improper. "Because the existence of an agreement to arbitrate is a threshold issue, the courts must have authority to assess, independently of the arbitrators' point of view, whether or not the parties ever reached such an agreement." *Id.* at 660, 547 A.2d at 1052.

The Final Award against Dewan must be vacated because Dewan and Walia never entered into any agreement to arbitrate Walia's counterclaims.

## II.    The Arbitrator had no Jurisdiction to Hear Walia's INA-based claims for "wage shortfalls" and "back wages."

Reversal is also required because the Arbitrator lacked jurisdiction to award Walia damages for "wage shortfalls" and "back wages" arising solely from alleged violations of the "prevailing wage" attestation provisions of the Immigration and Nationality Act, 8 U.S.C. §1101 et seq. (the "INA"). In his Response Brief, Walia

4

does not dispute either that the "wage shortfall" and "back wage" claims were based solely on the INA or that he has no private right of action for an alleged violation of the INA's attestation provisions. Instead, Walia asserts that even though he has no private right of action and cannot sue the Corporation in court for an alleged violation of the INA, he has the right to assert INA-based claims in an arbitral forum because the parties entered into contracts which contain broad arbitration provisions. Response Brief at 29.

Walia's argument should be rejected because there is no private right of action for his INA-based claims regardless of whether the claims are asserted in a judicial or an arbitral forum. Walia's attempt to distinguish the cases cited by Appellants in support of their threshold argument that the Arbitrator had no jurisdiction over the INA-based "wage shortfall" and "back wages" claims has no merit. For instance, Appellants cited this Court's decision in *Newcome v. Esrey,* 862 F.2d 1099 (4th Cir. 1988) for the proposition that if there is no private right of action, there is nothing to arbitrate, as the question whether a private cause of action exists logically precedes the question of arbitrability. Opening Brief at 25. In response, Walia states that even though this Court concluded no private right of action existed, the Court "still found the statutory claim to be arbitrable under the parties' arbitration agreement." Response Brief at 25. On the contrary, *Newcome* held that no private right of action existed for the statutory claim at issue

5

in that case and, as a result, did not submit that claim to arbitration because there was no claim to arbitrate. *Id.,* 862 F.2d at 1101. Walia also summarily dismisses *Dale v. Pru-Bache Secur. Inc.*, 719 F.Supp. 1164 (E.D.N.Y. 1989),[1] on the ground that it relates to a federal securities statute, but the Court recognized the same principle - if there is no private cause of action, there is no claim to arbitrate regardless of any arbitration provision. Finally, Appellants cited *Hooters of America, Inc. v. Phillps*, 173 F.3d 933 (4th Cir. 1999), for the proposition that the threshold question a court must answer is whether the claim at issue is arbitrable. Appellee completely ignores this point.

There is also no merit in Walia's attempt to distinguish *Ventrakaman v. REI Sys., Inc.*, 417 F.3d 418 (4th Cir. 2005), and the other cases cited by Appellants for the proposition that there is no private right of action afforded to H-1B nonimmigrants for wage claims under the INA. Walia contends these cases are distinguishable because "none of these courts held that the INA precluded arbitration of a wage related claim arising under it." Response Brief at 26. Appellee does not, however, cite a single case to support his argument that his INA-based claims may be recognized and enforced in an arbitration proceeding even though these claims are not recognized as actionable claims by the courts. Nor does Walia advance any support for his contention that, notwithstanding the

---

[1] *Dale v. Pru-Bache, supra*, was incorrectly cited in Appellants' Opening Brief as F. Supp.2d.

6

comprehensive statutory scheme enacted by Congress, and the fact that there is no private right of action for a violation of the attestation provisions of the INA in the courts, Congress nevertheless intended to confer a private right of action for INA-related claims in an arbitral forum.

Walia relies on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), for the proposition that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA" and that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive right afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Response Brief at 31. Walia's reliance is misplaced. Walia has no "substantive right" under the INA to assert a claim directly against Appellants for "back wages" or "wage shortfalls" in any forum.

There is also no merit in Walia's attempt to paint Appellants in a bad light by arguing they submitted "doctored documents" to the Department of Labor ("DOL") and falsely induced it into ruling that no violation of the attestation provisions of the INA occurred. Response Brief at 28. Walia's unsupported and extra-record accusations go too far. There is no evidence Appellants made any fraudulent representations to the Department of Labor. Moreover, Walia's contentions that he was unable to advise the DOL of the alleged fraud prior to the DOL's March, 2011determination and that the DOL would have ruled otherwise

7

had it known (Response Brief at 28), is false and misleading on a number of grounds the most obvious of which is the fact the DOL's determination that no violation occurred was issued on October 18, 2011 – seven months after Walia claims the determination was made and five months after Walia claims he learned of the alleged fraud.  See JA 121, ¶46.[2]

Finally, Walia's statement that he "successfully" dismissed his appeal of the DOL determination because it was redundant in light of the District Court's Order confirming and enforcing the final arbitration award is both misleading and outside the record. Response Brief at 29, fn 9.  The inference that the Administrative Law Judge dismissed the appeal because of this alleged redundancy is not true.  The ALJ specifically advised Walia's counsel that he would not force Walia to maintain the appeal and warned Walia that if he dismissed the appeal he would have no redress if this Court ruled the arbitrator lacked jurisdiction over the INA-based "back pay" and "wage shortfall" claims.[3]

---

[2] The regulations require a person who seeks to appeal the DOL determination to file a request for a hearing with the Chief Administrative Law Judge within 15 days of the date of the determination or the "determination shall become final and not appealable." 20 C.F.R. §655.815.  Walia's appeal of the DOL determination was filed on October 26, 2011, eight days after the determination. See JA 153, ¶161.

[3] Logic dictates that the real reason Walia dismissed the DOL appeal is because he was fairly certain by the comments made in the ALJ's discovery order that the ALJ was not going to rule in Walia's favor on his INA-based "back wage" and "wage shortfall" claims. See JA 269-270.

8

Walia makes two additional unavailing arguments in support of his claim the Arbitrator had jurisdiction over the INA-based claims.  At page 33 of the Response Brief, Walia states that the "compensatory damages awarded by the Arbitrator are based on the agreements between the parties and thus did not exceed her jurisdiction."   To the extent Walia is asserting the INA-based claims are wage obligations under the employment contracts, such assertion is wholly incorrect. The Arbitrator's award of "back wages" and "wage shortfalls" was based solely on Walia's claim that the "prevailing wage" under the INA and its supporting regulations was greater than the wages he contracted for in his employment contracts and that he was entitled to the difference. JA 53-54.

Walia is also incorrect that arbitral remedies were exclusive of the INA statutory remedies. Response Brief at 33.  While the remedies the Arbitrator employed for Walia's breach of contract claims (the net and gross profits claims arising under the employment agreements) were exclusive of the statutory remedies afforded by the INA, her award of "wage shortfalls" and "back wages" were solely predicated on the INA.  JA 53-54.

For the reasons set forth herein and in their Opening Brief, Appellants respectfully pray that the Court vacate the "back wage" and "wage shortfall" portions of the Final Award on the grounds that Walia had no private right of

action to assert those claims, the Arbitrator had no jurisdiction to hear those claims, and her award of damages for those claims was in manifest disregard of the law.

### III. The Final Award Is Completely Irrational Because it Includes Damages for Claims Walia Voluntarily Released and Waived Under An Agreement which the Arbitrator Found Was Valid and Enforceable.

Reversal is also required because the Arbitrator rendered a completely irrational award by holding that the 2009 Settlement Agreement was valid and enforceable and nevertheless awarded damages for claims which were explicitly released. Walia does not dispute that the Arbitrator ruled the Settlement Agreement was valid and binding. JA 259. Nor does Walia dispute that, notwithstanding this ruling, the Arbitrator awarded Walia damages based on claims arising from acts and alleged conduct which the Settlement Agreement released. JA 259. In light of the breadth of the waiver and release, and the Arbitrator's determination that the Settlement Agreement was valid and binding on Walia, Appellants maintained in the District Court below and their Opening Brief that the Arbitrator's decision to award damages to Walia based on released claims contradicted the plain language of the release and waiver provisions, was completely irrational and in manifest disregard of the law. Opening Brief at 28-37.

Walia advances no serious argument to the contrary. Instead, Walia posits that this Court should affirm the Award despite the enforceable waiver and release

10

or, in the alternative, affirm on the ground that the waiver and release is unenforceable. Both arguments are devoid of merit.

Although Walia asserts that he was presented with the Settlement Agreement and "asked to sign it or leave it," Response Brief at 35, Walia offers no record citation in support of this alleged fact, which, if anything, would tend to show Walia was not coerced to sign the Settlement Agreement. *Blum v. Blum*, 59 Md. App. 584, 594, 477 A.2d 289, 294 (1984) ("Duress which permits avoidance of a contract consists of the use of coercion, the victim's loss of the ability to act independently and the entry by the victim into the contract."). Nor is there any merit in Walia's contention that the Award should be confirmed despite the waiver and release because Dewan purportedly represented the Corporation and Walia with respect to the Settlement Agreement. *Id.* Once again, Walia offers no record support for this alleged fact, which is belied by the Settlement Agreement itself. The first recital notes Walia is a former employee of the Company. JA 250 ¶A. The second recital acknowledges that the Corporation and Walia were entering into the Settlement Agreement in order to resolve claims Walia had against the Corporation. JA 250 ¶B. In addition, Paragraph 1 of the Settlement Agreement provides that the purpose of the Agreement was the compromise of disputed claims. JA 250 ¶1. Thus, the Settlement Agreement's plain language refutes Walia's assertion that Dewan was representing the Corporation and Walia.

11

Walia also contends, without citing any support in the record, that Dewan "represented to Walia that the Release Agreement prepared by him was in Walia's favor" and that he "trusted [those] representations." Response Brief at 40. In view of the fact that Walia no longer worked for the Corporation, had already raised claims against the Corporation, and was entering into a Settlement Agreement with the Corporation to resolve those claims, these belated contentions lack credibility. Nor is there any record support for Walia's contention that he was undergoing radiation therapy in November, 2009, that he was weak both physically and mentally when he signed the Settlement Agreement, and that Appellants took advantage of him due to his alleged medical condition at that time. This Court should reject Walia's invitation to find facts based on unsupported statements that neither the Arbitrator nor the District Court found in the proceedings below.

Walia also misplaces reliance on the Older Workers Benefit Protection Act of 1990, 29 U.S.C. §§621 et seq. ("OWBPA"), in arguing that the Court should affirm the Award because the Settlement Agreement did not contain a statement giving Walia time to revoke his acceptance within a specified period after its execution. Response Brief at 36, 42. The OWBPA does not apply to Walia's claims, nor has Walia prior to the filing of his Brief ever made this argument or referenced this statute in the proceedings below.

There is likewise no merit in Walia's assertion, also made for the first time in his Response Brief, that the Settlement Agreement violates the Maryland Wage Protection and Collection Act, Md. Code, Labor and Employment, §3-501, et. seq. ("MWPCL"). According to Walia, under the MWPCL, a waiver signed by an employee does not release an employer from liability for wages owed to the employee. Response Brief at 38. Walia fails to refer to any portion of the statute that precludes such a waiver. Nor does Walia cite to any Maryland case law interpreting the statute that prohibits a waiver and release of an employee's claims.

As this Court noted in *Kunda v. C.R. Bard, Inc*., 671 F.3d 464, 468 (4th Cir. 2011), there are no such prohibitions:

> [T]he MWPCL contains no express language of legislative intent that that law is a fundamental Maryland public policy. Furthermore, the MWPCL contains no language indicating that any contractual terms contrary to its provisions are void and unenforceable, or that any provision of the MWPCL may not be waived by agreement.

Finally, Walia's contention that the Court should affirm the Award notwithstanding the release and waiver because the Arbitrator found Appellants acted fraudulently and maliciously with respect to the Settlement Agreement has no merit. Response Brief at 41. To the contrary, the Arbitrator found the Settlement Agreement to be "valid and enforceable." JA 255, 257 at ¶8. The Arbitrator's only finding of improper conduct related solely to documents produced in the arbitration proceeding that showed a discrepancy in the

13

Corporation's income in 2008.  JA 258 at ¶13.  These documents were relevant to Walia's breach of contract claim that he was not paid a percentage of the Corporation's income pursuant to the employment agreements.  Although the Arbitrator determined the Claimant was untruthful as a result of this discrepancy (JA 189), the Arbitrator specifically found that the Settlement Agreement was properly executed and was valid and enforceable.

By asking this Court to affirm the Final Award despite the validity and enforceability of the Settlement Agreement, Walia is, in essence and without filing a cross-appeal, asking the Court to rule the Settlement Agreement is unenforceable, something the Arbitrator and District Court refused to do.  Maryland public policy dictates that courts should "'look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony.'"  *Clark v. Elza*, 286 Md. 208, 219, 406 A.2d 922, 928 (1979), quoting *Chertkof v. Harry C. Weiskittel Co.*, 251 Md. 544, 550, 248 A.2d 373, 377 (1968) *cert. denied*, 394 U.S. 974 (1969).

The Arbitrator had no basis for disregarding this strong public policy and the plain and unambiguous language of the Settlement Agreement by awarding Walia damages for claims he clearly and unequivocally waived and released.  For the reasons set forth herein and in Appellants' Opening Brief, the Final Award should

14

be vacated because it is completely irrational, fails to draw its essence from the Settlement Agreement, and is in manifest disregard of the law.

## IV.    Walia's Counterclaims do not Fall Within the Scope of the Settlement Agreement's Arbitration Provision

Reversal is also required because the relief awarded by the Arbitrator exceeds the scope of the Settlement Agreement's arbitration provision. Walia contends that the arbitration provisions in the 2006 Employment Agreement and the Settlement Agreement, which was executed three years later, are broad arbitration provisions that encompass all claims between the parties. Response Brief at 29-31. As argued above, the Arbitrator had no jurisdiction to hear the INA-based claims because there is no private right of action and nothing to arbitrate. But even if this Court were to conclude that Walia had a cognizable INA claim, that claim as well as Walia's other counterclaims are not covered by the arbitration provision in the 2006 Employment Agreement as that agreement was extinguished and superseded by the Settlement Agreement. And, the arbitration provision in the Settlement Agreement cannot rationally be interpreted to cover Walia's released claims. Accordingly, the Final Award must be vacated as Walia's counterclaims fall outside the scope of the Settlement Agreement's arbitration provision and the Arbitrator had no authority to hear, let alone render an award on, those released claims.

15

The right to arbitrate disputes arising from the 2006 Employment Agreement was extinguished when Walia entered into the Settlement Agreement and received $7,000 in full settlement of his claims. Under Maryland law, settlement agreements are binding agreements to discharge a preexisting claim. *Calabi v. Government Employees Ins. Co.,* 353 Md. 649, 653, 728 A.2d 206 (1999); *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979). Once the parties entered into the Settlement Agreement and the consideration as paid, all claims subject to the waiver and release provisions were extinguished and Walia was left to enforce only claims arising from the Settlement Agreement. *Allstate Insurance Co., v. Stinebaugh*, 374 Md. 631, 648-650, 824 A.2d 87 (2003); *Clark v. Elza*, 286 Md. 208, 214, 406 A.2d 922, 926 (1979) (where "the parties intend the new agreement itself to constitute a substitute for the prior claim, the substituted contract immediately discharges the original claim. Under this latter type of arrangement, since the original claim is fully extinguished at the time the agreement is made, recovery may only be had upon the substituted contract."); *Fidelity Deposit Company of Maryland v. Olney Associates, Inc.,* 72 Md. App. 367, 376-77, 530 A.2d 1 (Md. 1987).

As a result of executing the Settlement Agreement in 2009, Walia released claims he later asserted as counterclaims in the arbitration proceeding, and he extinguished his previous right to have claims "arising under or related to" the

16

2006 Employment Agreement heard in an arbitral forum. At that point, Walia had only the right to assert claims for breach of the Settlement Agreement and the right to seek arbitration of disputes which "arise concerning this AGREEMENT or its performance."[4] JA 251 ¶8. Such disputes would include whether the Settlement Agreement was enforceable; whether payment was made ¶2; whether a specific claim was released ¶¶3, 4; whether the non-disclosure and no disparagement provisions were breached ¶¶5, 6; and whether the reference provision was violated ¶7.

The arbitration provision in the Settlement Agreement did not authorize arbitration of the merits of the underlying claims which Walia clearly and unequivocally released. While arbitration provisions are to be broadly construed under the Federal Arbitration Act, 9 U.S.C. §§101 *et seq.* ("FAA") and the Maryland Uniform Arbitration Act, MD Code, Courts and Judicial Proceedings §§3-201 et seq. ("MUAA"), they must be interpreted reasonably and in accord with the intent of the parties as evidenced by the language they employed.

In determining the scope of an arbitration clause a court must find "reliable evidence from the language actually employed in the contract that the parties

---

[4]    Although Walia repeatedly states that the arbitration provisions in the 2006 Employment Agreement and the Settlement Agreement are identical, *see* Response Brief at 24, 25, 27, 29, 33, 34, the only arbitration provision he quotes is the arbitration provision contained in the superseded 2006 Employment Agreement. *Id*. at 29. The two arbitration provisions are not identical.

17

intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor." *Joseph T. Trionfo & Sons v. Ernest B LaRosa & Sons, Inc.*, 38 Md. App. 598, 605-06, 381 A.2d 727 (1978); *See also Stephen L. Messersmith, supra,* 313 Md. at 658 ("It is axiomatic that an arbitration panel derives its authority to decide a given dispute from the disputing parties themselves. As this Court noted more than forty years ago: 'The question is one of intention to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to . . . [arbitration] tribunals, however helpful their processes, except to the extent that he has signified his willingness.' (Citation omitted). *Continental Milling & Feed Co. v. Doughnut Corp*., 186 Md. 669, 675, 48 A.2d 447, 450 (1946)"). Thus, "arbitration is simply a matter of contract between the parties" and "a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Under the objective theory of contracts employed in Maryland, courts "look at what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." *Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700 (Md. 2007). Here, in order to expand the reach of the Settlement Agreement's arbitration provision to include disputes relating to the merits of the released claims, the Court would have to find that a reasonably prudent person in the same

18

position as Walia and the Corporation agreed to arbitrate the very claims that they unambiguously and unequivocally agreed were waived and released. Such a strained interpretation stretches the arbitration provision beyond the breaking point and would render the Settlement Agreement meaningless. Accordingly, the Final Award must be vacated as the counterclaims asserted by Walia exceeded the scope of the Settlement Agreement's arbitration provision and were not arbitrable.

## **CONCLUSION**

For the reasons stated, Appellants respectfully pray that the Court grant the relief requested in Appellants' Opening Brief.

Dated: March 7, 2013

/s/ Paul S. Schleifman
Paul S. Schleifman, Esq.
Virginia Bar No. 23353
LAW OFFICE OF PAUL S.
SCHLEIFMAN, PLLC
1600 Wilson Blvd., Suite 905
Arlington, Virginia 22209
T: (703) 528-1021
F: (703) 831-8949
pschleifman@schleifmanlaw.com
*Counsel for Appellants*

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 12-2175        **Caption:** Kiran Dewan, CPA, P.A. v. Arun Walia

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

☑    this brief contains _____4,625_____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

☑    this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 _____ [*state name and version of word processing program*] in
Times New Roman, 14 point _____ [*state font size and name of the type style*]; *or*

☐    this brief has been prepared in a monospaced typeface using
_____ [*state name and version of word processing program*]
with _____ [*state number of characters per inch and name of type style*].

(s) Paul S. Schleifman _____

Attorney for Appellants _____

Dated: 3/7/13 _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

Ramesh Khurana
15883 Crabbs Branch Way
Rockville, MD 20855

Mark G. Chalpin
116 Billingsgate Lane
Gaithersburg, MD 20877

<u>*/s/ Catherine B. Simpson*</u>
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664

Filing and service were performed by direction of counsel